## The People of the State of Illinois, Defendant in Error, v. A. Anderson, Plaintiff in Error.

### Gen. No. 27,528.

1. ASSAULT AND BATTERY—*intent as element of assault with automobile negligently operated*. Specific intent to injure pedestrians is not essential to the commission of an assault with a deadly weapon, where the assault consists of operating an automobile in a negligent manner where the evidence shows that defendant was guilty of gross or wanton negligence at the time in question.

2. ASSAULT AND BATTERY—*what constitutes criminal negligence in operating automobile*. The driver of an automobile which struck and injured two pedestrians is shown to have been guilty of criminal negligence amounting to an assault with a deadly weapon where the evidence shows that on a rainy night when the pavements were wet he drove across a busy street intersection in disregard of a signal from the traffic policeman to stop, that he was driving at from 10 to 15 miles per hour, according to his own testimony, and in apparent disregard of the traffic conditions, and that he struck two pedestrians who had been signaled to cross by the policeman, although according to testimony on defendant's behalf neither he nor his companion heard the policeman's whistle or saw his stop signal and he merely drove with the traffic and that the pedestrians were running through the traffic when they were struck.

THOMSON, P. J., dissenting.

Error by defendant to the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Affirmed. Opinion filed May 9, 1923. Rehearing denied May 23, 1923.

RANKIN, GUERINE, LUSTFIELD & LANDISE and LIGHTFOOT & BRAUN, for plaintiff in error.

ROBERT E. CROWE, for defendant in error; EDWARD E. WILSON, CLYDE C. FISHER and ALVA L. BATES, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

An information was filed in the municipal court of Chicago whereby the defendant was charged with making an assault with a deadly weapon—an automobile—upon Mrs. M. A. Carroll, contrary to the statute. Upon a trial before the court, a jury having been waived in writing, the defendant was found guilty and adjudged to pay a fine of $500, to reverse which he prosecutes this writ of error.

The record discloses that about 10:45 p. m., March 20, 1921, the defendant was driving a Ford sedan south in Michigan avenue. The pavement was wet as it had just ceased raining. Michigan avenue is intersected at right angles by Randolph street. There are safety islands in the center of Michigan avenue near the north and south crosswalks of Randolph street. On each of the safety islands there was a red light. Stationed in Michigan avenue near the south island was a crossing policeman with an ordinary whistle for directing traffic. Two blasts of the whistle signaled the north and south traffic to stop and the east and west traffic to proceed. At the time in question the police officer blew his whistle twice for the north and south traffic to stop and to permit the traffic in Randolph street from the west to proceed into Michigan avenue where most of it turned either north or south. Mrs. Carroll and her brother-in-law were coming east on the south sidewalk of Randolph street to cross Michigan avenue on their way to the Illinois Central suburban station. When the officer blew his whistle twice and raised his hand to stop the north and south traffic he saw Mrs. Carroll and her companion waiting to cross and beckoned to them to come on which they proceeded to do. When they were about 10 feet out into the roadway they were struck and knocked down by defendant's automobile and severely injured. The defendant stopped his automobile somewhere on the west side of Michigan avenue south of Randolph street, where the police officer and other persons called

a passing taxicab and Mrs. Carroll and her brother-in-law were taken to the hospital.

The defendant strenuously contends that the most that can be said against him is that he was guilty of negligence in the operation of his automobile; that the statute was not intended to punish negligent acts but before the defendant could be found guilty it must be shown beyond a reasonable doubt that there was a specific intent on his part to injure Mrs. Carroll. This is not the law. We have heretofore held that an automobile may be so used as to be a deadly weapon, within the meaning of section 25, div. 1, ch. 38, Cahill's Rev. St.; *People v. Clink,* 216 Ill. App. 357, and that where the negligence of a defendant is gross or wanton, it is criminal and the guilty will be punished accordingly. *People v. Clink, supra; People v. Adams,* 289 Ill. 339; *People v. Falkovitch,* 280 Ill. 321; *Aiken v. Holyoke St. R. Co.,* 184 Mass. 269; *State v. Schutte,* 87 N. J. L. 15; Berry on Automobiles (2nd Ed.), sec. 916.

In the *Clink* case the information was substantially the same as the one before us, and a fine of $1,000 there imposed on the defendant for recklessly driving an automobile and injuring a person was affirmed, and the authorities above cited were referred to as sustaining the judgment of conviction. Mr. Presiding Justice McSurely, in delivering the opinion of the court in that case, quoted from the *Adams, Aiken* and *Schutte* cases.

In the *Adams* case the defendant was convicted of manslaughter for having struck and killed a person while driving his automobile at a dangerous and excessive rate of speed. The court there said (p. 345): "It is not the law that a person is criminally responsible for every act of mere negligence that causes the death of another. Negligence, to be criminal, must be gross or wanton negligence. Gross negligence is negligence that borders onto recklessness, and wanton

negligence, as applied to the running of motors and vehicles, implies a positive disregard to the rules of diligence and a reckless heedlessness of consequences. * * * Negligence, to become criminal, must necessarily be reckless or wanton and of such a character as shows an utter disregard of the safety of others under circumstances likely to cause injury. *People v. Falkovitch,* 280 Ill. 321.''

In the *Aiken* case, which was an action in tort to recover for injuries, the Supreme Judicial Court of Massachusetts, in holding that a person may be guilty of wilful and intentional wrong where his negligence is reckless and wanton, said (p. 271): ''If one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a wilful and intentional wrong. It is no defense to a charge of manslaughter for the defendant to show that, while grossly reckless, he did not actually intend to cause the death of his victim.''

In the *Schutte* case, where the defendant was convicted of assault and battery for wilfully and unlawfully striking and wounding a person with an automobile, the court said (p. 16): ''Counsel for the plaintiff in error correctly contends that both the wilful wrongdoing that constitutes malice in the law and also an intention to inflict injury are of the essence of a criminal assault; and that, as a necessary corollary, mere negligence will not sustain a conviction for such crime. With these abstract propositions no fault is to be found, provided it is borne in mind that the necessary malice may be implied from the doing of an unlawful thing from which injury is reasonably to be apprehended, and also that an intention to injure need not be specifically directed to the particular individual that was injured, but may be inferred in law from the consequences that are naturally to be apprehended as the result of the particular act, the doing of which was intentional. 'The prisoner' said Chief Justice

Coleridge, in *Queen v. Martin,* 8 Q. B. Div. 54, 'must be taken to have intended the natural consequences of that which he did. He acted unlawfully and malicious- ly, not that he had any personal malice against the particular individual injured, but in the sense of doing an act calculated to injure, and by which others were, in fact, injured.' " The court there further said (p. 17): "The industry of counsel has not furnished, nor have I been able to find, a decided case in which the assault was committed with an automobile, a com- paratively modern appliance, but the principles in- volved are as old as the criminal law itself."

From the foregoing authorities it is clear that if the evidence shows the defendant drove his automo- bile in a reckless manner in utter disregard of the rights of pedestrians in the street, then the judgment against him should be affirmed. The evidence is un- disputed that the police officer was near the safety island in Michigan avenue at the south crosswalk of Randolph street regulating the traffic; that he blew his whistle twice and raised his hand signaling the north and south traffic to stop and that in Randolph street to proceed east into Michigan avenue; that when he did this he beckoned to Mr. and Mrs. Carroll, who were at the southeast corner of the intersection, to come ahead across Michigan avenue, which they pro- ceeded to do, after looking to the north and to the south, and when they had gotten into the roadway of Michigan avenue about 10 feet they were struck by defendant's automobile, thrown to the pavement and severely injured. The evidence is also undisputed that the defendant was driving a left-hand drive Ford sedan south in Michigan avenue; that the windshield was up and the side windows open; that sitting beside the defendant was his nephew, E. L. Graves, a young man who was engaged in the lumber business. In the rear seat was the defendant's wife, his niece and Grave's mother; that none of them in the Ford sedan heard the officer's whistle, nor did they see him until

after the accident; that they did not see Mr. and Mrs.
Carroll until they were a few feet from them. The
evidence further shows without contradiction that
while defendant lived in Maywood, a suburb of Chi-
cago, he had often driven over the streets of Chicago.
He testified in reference to policemen regulating traffic
in Chicago by means of a whistle, that his understand-
ing was that one blast of the whistle meant to stop
and two to go ahead, but that he always watched the
policeman signal with his hand, and followed such sig-
nals. Evidence offered by the People showed that one
blast of the whistle signaled the north and south traffic
to proceed and the east and west traffic to stop; that
two blasts of the whistle signaled the east and west
traffic to proceed and the north and south traffic to
stop.

The defendant and his nephew Graves both testified
that in coming south in Michigan avenue the car did
not stop but proceeded across the Randolph street in-
tersection at about 12 or 15 miles per hour. The police
officer testified that the defendant was going at the
rate of 30 to 35 miles per hour at that point. He fur-
ther testified, however, that he did not see the automo-
bile until it struck Mrs. Carroll and her brother-in-law, .
and that he judged the speed principally from the fact
that it ran about 100 or 150 feet south of Randolph
street before it was stopped at the west curb of Mich-
igan avenue. He further testified that the southbound
traffic at the time was light; that when he blew his
whistle twice and held up his hand one or two cars
coming south in Michigan avenue stopped at the north
side of Randolph street in compliance with his signal;
that after he gave this signal only two cars passed
south, the first being defendant's and the second a
Buick car which was about to stop when he signaled
it to catch the Ford car. The defendant and Graves
testified that as soon as the accident occurred the de-
fendant endeavored to stop the car as rapidly as pos-
sible, and that he drew up to the curb about 25 or 30

feet south of Randolph street; that the reason he did not stop sooner was occasioned by the fact that there was another automobile to his right which prevented him from pulling up to the curb. They both testified in substance that they were going south with the traffic and that there was a considerable number of machines in the street proceeding south at the time, some to the defendant's right and others to his left, and that a large limousine was in front of him; that he merely drove with the traffic and that Mrs. Carroll and her brother-in-law ran through the traffic in front of his machine. They further testified that there were a number of automobiles standing in Randolph street at the west side of Michigan avenue; that some of these had just turned in to Michigan avenue to the south and that this caused the defendant to turn his car slightly to the east.

To avoid a continuance it was stipulated on the trial that if Graves' mother were present she would testify that the defendant drove his car in the manner and at the speed that he testified to.

Henry A. Hopf testified that at the time in question he was driving a Buick car south in Michigan avenue and imagined that at the time in question he was about a block north of the defendant's car; that he did not hear the signal because he was too far north; that as he approached Randolph street he slowed down to find out if the traffic was clear; that the first thing he noticed was two bodies rolling in the street; that he saw a police officer near the safety island and that the latter held up his hand to stop him; that the witness stopped his car and the officer then called him to come and catch the Ford; that he immediately started up taking it for granted that the Ford was the cause of the accident; that the Ford proceeded immediately to stop near the west curb of Michigan avenue, which it did about 100 or 150 feet south of Randolph street; that there was another car between the defendant's

and the west line of Michigan avenue, but that it stopped at Randolph street intersection; that the Ford did not pass over the Carrolls but knocked them aside; that both the witness and defendant got out and went back to see what had happened. He further testified that the traffic was not very heavy at the time; that he was going 15 or 18 miles per hour; that defendant did not pass him on the way down Michigan avenue; that he did not see defendant until after the accident; that it was storming at the time and he believed it was raining; that he noticed several automobiles standing in Randolph street at the west side of Michigan avenue just starting to turn the corner south, but that no car turned south into Michigan avenue before he passed. This is substantially all the material evidence in the record. This witness' testimony is not in accordance with that of defendant and Graves who both testified that an automobile turned into Michigan avenue from Randolph as defendant was crossing the intersection which caused the defendant to turn slightly to the east.

From the foregoing evidence we think it clear that defendant was grossly negligent in driving his automobile. He was not a stranger in the city. It was nearly eleven o'clock at night, and had been raining or had just stopped, and the pavement was wet. The policeman was in the proper place in the roadway of Michigan avenue directing the traffic. He blew his whistle twice and held up his hand and the defendant not only did not hear the whistle but he did not see the policeman. He drove across the intersection, according to his own testimony, at 12 or 15 miles per hour clearly heedless of the rights of anyone on the street. He was apparently paying no attention to the general condition of the traffic, and in these circumstances we think the finding of the court was warranted by the evidence.

The judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

TAYLOR, J., concurs.

MR. PRESIDING JUSTICE THOMSON dissenting: I am unable to concur in the decision of this case, as announced in the foregoing opinion. While I concur in all that is said in the opinion relating to the law applicable to the case, I am of the opinion that the facts, which seem to me to be clearly established by the evidence in the record, are not such as to make out a case of criminal negligence against the defendant.

Certainly, it is not shown that the defendant was driving his car at such a rate of speed as to amount to reckless and wanton conduct on his part or such conduct as would make out a case of assault, on the prosecuting witnesses, with his automobile, under such circumstances as to show an abandoned and malignant heart. Under all the evidence in the case, except that of the policeman, the defendant was driving not to exceed 15 miles an hour. That the testimony of the policeman is worthless on the subject of the speed is apparent for his testimony shows that his estimate of the speed was purely a conclusion, and, in my opinion, it further shows that the premises on which he based his conclusion were without any foundation whatever.

In what, then, did the criminal conduct of the defendant consist? The evidence shows that he had a very mistaken idea of what the whistle crossing-signals meant. But this is quite immaterial, for the testimony of the defendant and the witness who was sitting beside him in the automobile were both to the effect that neither of them heard the policeman's whistle at all. In my opinion, the most that can be said of the defendant's conduct, from the evidence in the record, is that he was careless and negligent in overrunning the crossing, after the whistle had been blown. That he must have been close to the crossing when the whistle was blown is apparent from the testimony of the disinterested witness, Hopf, who was following the defendant in the Buick car, approx-

imately a block behind him. This witness gave it, as his. recollection, that even when he reached Randolph street, the east and west traffic, which apparently had .been standing in Randolph street, waiting to proceed into Michigan avenue, when the signal was given, had not as yet proceeded into Michigan avenue.

As far as the failure of the defendant to see the Carrolls in time to avoid striking them is concerned, it is apparent that the Carrolls had an even better opportunity to see the defendant's car than the defendant had to see them and yet they both testified that they looked north and south before proceeding onto the roadway, and did not see defendant's car until immediately before they were struck.

I appreciate the fact that traffic conditions in such a great city as Chicago have come to be such that the operation of an automobile in the congested districts is exceedingly dangerous to pedestrians having occasion to cross the roadways, unless such operation is conducted with due care and unless the laws of the road and the rules of traffic are carefully observed, but, in my opinion, that does not mean that where a driver is careless, or negligent, and overruns a crossing signal, failing to stop where he should, and strikes a pedestrian, it follows that he has been guilty of such gross and wanton negligence as to amount to a criminal act, which would warrant finding him guilty. of assault with a deadly weapon, under circumstances showing an abandoned and malignant heart. Cases are cited by counsel for the State where such convictions have been had, and, in my opinion, properly so, for the evidence in those cases established that the defendants there being prosecuted had been guilty of such a degree of reckless conduct as to fulfill those conditions which the statute calls for, in order that the offense of assault may be made out. In my opinion that was not the case here.