# OTHO BECK v. STATE.

No. A-9887.   Dec. 3, 1941.

(119 P. 2d 865.)

230

A. Flint Moss and Tom Durham, both of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Otho Beck, was charged on December 7, 1939, by information in the district court of Tulsa county with the offense of assault with a dangerous weapon, was tried, convicted, and sentenced to serve a term of three years and six months in the State Penitentiary, and appeals to this court.

It is first contended that the information filed against the defendant was fatally defective for the reason that the driving of an automobile under any circumstances is not the use of a dangerous weapon of the kind and character defined by the statute.

The information against the defendant, omitting the formal parts, reads as follows:

"* * * that Otho Beck on the twenty-eighth day of November, A.D., 1939, in Tulsa County, State of Oklahoma, and within the jurisdiction of this court, did unlawfully, willfully and feloniously commit an assault and battery upon the person of one Richard Paris, by means of such force as was likely to produce death; that is to say, the defendant was driving and propelling a 1938 Ford coupe automobile in a dangerous and reckless manner while under the influence of intoxicating liquor; and at the intersection of 9th street and Cincinnati Avenue in the City of Tulsa, then and there driving and propelling said automobile over and against the body and person of the said Richard Paris, then and there throwing and hurling him against an automobile and to the street and pavement, severing his right thumb and otherwise bruising, wounding and injuring him, the said Richard Paris, in the way and manner aforesaid; with the unlawful and felonious intent then and there upon the part of the said defendant, Otho Beck to injure the said Richard Paris, and do him great bodily harm and injury * * * ."

This information was drawn under section 1870, O. S. 1931, 21 Okla. St. Ann. § 645, which is in the following language:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or airgun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five years, or by imprisonment in a county jail not exceeding one year."

It is contended by the defendant that this statute was originally passed by the Territorial Legislature in the year 1890 and has been adopted into our present Code without any modification. That in 1890 there were no

automobiles, and the Legislature did not have in mind that the term "dangerous weapon" should ever include an automobile, and that the court should not construe the statute so as to enlarge it to include automobiles.

It is further insisted the term "or other means whatever," as used in the statute, is a general term, and that under the rule of ejusdem generis such general phrase is restricted to things of like character, as the specific things enumerated in the statute.

An examination of the statute discloses that the assault defined by the statute may be committed "with any sharp or dangerous weapon" or it may be committed by any person "who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or airgun or other means whatever." The term "or other means whatever" relates to that part of the statute making it an offense to shoot or attempt to shoot at another with a gun, and does not refer to the first part of the statute making it an offense to assault a person with a sharp or dangerous weapon.

No cases are cited by counsel for defendant in support of their contentions that an automobile is such an instrumentality that it may never be a dangerous weapon as defined by the statute. They rest their argument upon the conclusion that since automobiles were not in use when this statute was first adopted, it could not have been in the contemplation of the Legislature that the term "dangerous weapon" would ever include an automobile.

We have many articles which are not dangerous weapons per se, but which from the manner of their use may become dangerous weapons. A chair, a stick, a clock, and many other articles are not dangerous weapons per se, but the manner of their use might make them a dangerous weapon. This court, in the case of Winkler v.

State, 45 Okla. Cr. 322, 283 P. 591, and in the case of Lamb v. State, 70 Okla. Cr. 236, 105 P. 2d 799, has specifically held that where an automobile is being operated in a manner forbidden by law, and the proof shows that the accused, while so operating the automobile, ran into and injured a person lawfully on said highway, that the operation of the automobile in such manner takes the place of and supplies the unlawful intent. In each of these cases this court sustained convictions for assaults committed with an automobile.

Defendant contends that the rule in Winkler v. State, supra, and Lamb v. State, supra, is erroneous, and that those decisions should be specifically overruled.

While no authorities have been cited by counsel for defendant in support of their argument and no brief has been furnished to the court upon this point by the state, we have undertaken to make an examination of the decisions of many other states to ascertain whether the courts of last resort of those states in their interpretations of similar statutes have held that operation of an automobile in a manner forbidden by law resulting in injury to a person lawfully using the highway constitutes a criminal assault.

In the case of Williamson v. State, 92 Fla. 980, 111 So. 124, 126, 53 A.L.R. 250, it is stated:

"In the case of People v. Clink, 216 Ill. App. 357, it was said: 'It is contended that an automobile is not a deadly weapon within the meaning of the Statute on Assault, § 25, c. 38 (J. & A. par. 3507 [Smith-Hurd Stats. c. 38, § 60]). It is probably true that very nearly all of the reported cases involving a deadly weapon relate to an instrument that was lifted by the [hand] in making the assault, most frequently something in the nature of a bludgeon. There is no sound reason why the deadly nature of the instrument should be determined solely with

reference to its use while lifted in the hands; any instrument which through human control is the means of inflicting a blow may be a deadly weapon. It is any instrument so used as to be likely to produce death or great bodily harm. Bouvier's Law Dictionary; McNary v. People, 32 Ill. App. 58. In Acers v. United States, 164 U. S. 388, 17 S. Ct. 91, 41 L. Ed. 481, it was held that "anything, no matter what it is, * * * whether it was made by him for some other purpose, * * * if it is a thing with which death can be easily and readily produced, the law recognizes it as a deadly weapon." This definition includes an automobile when used in a manner likely to produce death or great bodily harm.'

"This case was followed and approved in the case of People v. Anderson, 229 Ill. App. 315. See, also, 5 C. J. 737; Berry on Automobiles (4th Ed.) § 1755; Clark v. State, 63 Tex. Cr. R. 579, 140 S. W. 779; People v. Rodrigo, 69 Cal. 601, 11 P. 481 [8 Am. Crim. Rep. 53].

"We conclude, therefore, that an automobile may be so used as to constitute a deadly weapon within the meaning of section 5061 of the Rev. Gen. Stats., and that it was competent for the jury, under the evidence in this case, to determine whether the plaintiff in error was at the time of the offense charged so using his automobile as to constitute the same a deadly weapon within the meaning of the law."

In the case of Brimhall v. State, 31 Ariz. 522, 255 P. 165, 53 A.L.R. 231, it was held:

"Negligent personal injuries when recklessly, wantonly, or willfully inflicted so as to show an utter disregard of the safety of others, may render one liable for aggravated assault, although there was no intent to inflict injury."

In Bleiweiss v. State, 188 Ind. 184, 119 N.E. 375, 122 N.E. 577, it is said:

"There can be no doubt that an assault and battery may be committed by striking another with an automobile."

It is further held in that case that the intent to injure may be inferred from intentional acts, where the injury was the direct result of them, done under circumstances showing a reckless disregard for the safety of others, and a willingness to inflict the injury, or the commission of an unlawful act which leads directly and naturally to the injury.

In the case of People v. Benson, 321 Ill. 605, 152 N.E. 514, 516, 46 A. L. R. 1056, it is stated:

"We do not think that the evidence in this case warrants the finding that Benson had the specific intent in his mind to strike or collide with the other car at the time he was passing it with his Ford coupe, but the evidence does warrant the finding of the judge who tried the case that he was guilty of reckless driving and speeding while attempting to pass the car which was shown to be traveling about 25 or 30 miles an hour at the time it was struck, and that his conduct on this occasion was shown, beyond a reasonable doubt, to be so reckless, wanton, and willful as to show an utter disregard for the safety of the persons in the Chevrolet car. Under the previous holdings of this court such a finding is sufficient to convict the defendant of an assault with a deadly weapon, as charged in the indictment in question. People v. Anderson, 310 Ill. 389, 141 N.E. 727."

We have found no state in which it is held that an automobile may not from the manner of its use become a deadly weapon in which an unlawful assault and battery may be committed.

For an annotation of the decisions from the various states upon this question, see: 16 A. L. R. 914; 21 A. L. R. 1504; 27 A. L. R. 1182; 30 A. L. R. 66; 41 A. L. R. 725; 42 A. L. R. 1120; 46 A. L. R. 1060; 49 A. L. R. 608; and 53 A. L. R. 254.

It is our conclusion after an examination of all these authorities that the statement of law set forth in Winkler

v. State, supra, and Lamb v. State (6th par. syl.), supra [70 Okla. Cr. 236, 105 P. 2d 800]: "Where the intent with which an offense is committed is an essential element of such offense, the operating of an automobile by a person charged with an offense in a manner forbidden by law takes the place of and supplies the unlawful intent. It then becomes a question of fact whether or not defendant at the time was guilty of 'culpable negligence' in operating an automobile upon the highway in violation of the law", is a correct statement of the law; and that based upon that conclusion, we hold that the information herein was sufficient to charge a violation of section 1870, supra.

Lastly, it is contended by the defendant that the punishment herein is excessive. In support of this contention the defendant cites several cases concerning assaults in which the punishment inflicted was less than that assessed against the defendant herein.

The question as to whether the punishment imposed against the defendant is excessive and should be modified depends solely upon the facts and circumstances in each particular case. In each of the cases cited by counsel for defendant, we find a peculiar set of circumstances which probably justified the fixing of the punishment as low as was done.

Here, we have a defendant who has been convicted of violations of our laws so many times that by his own admissions he cannot tell the exact number. He testified on cross-examination that he was a liquor dealer in the city of Tulsa, and had been for the past eight years.

That defendant was drunk and driving his automobile upon one of the main thoroughfares of Tulsa at a speed

of 50 miles an hour or greater is practically undisputed. The witnesses for the state so testified.

The defendant testified in his own behalf, saying that he had drunk eight bottles of beer and was driving up the street about 45 miles per hour, and was attempting to turn the corner where he struck the injured person, while going at this rate of speed.

There is nothing in the record which would justify this court in interfering with a verdict rendered by a jury of twelve men who heard the evidence and saw the demeanor of the defendant on the witness stand. A different view might be taken if the accused were a person who was a law-abiding citizen with a good record of peaceful and honest citizenship behind him. But here the defendant's everyday business is devoted to a violation of our laws.

When you get a combination of gasoline in a carburetor and alcohol in the operator of an automobile, disaster generally follows.

While it is the duty of the courts to guard the rights of every defendant charged with crime and to give him the full benefit of every reasonable doubt of his guilt when tried for crime, it is equally the duty of the courts to protect the traveling public against reckless, wanton, willful, and unlawful conduct of drivers of automobiles over the public roads of the state.

The defendant here drove an automobile at a high rate of speed into a high school boy, knocked him several feet from the street, clear up onto a sidewalk adjacent to the street. His thumb was severed by the force of the blow. He suffered internal injuries and bruises; and had it not been for the aid of some fellow high school students who were familiar with first aid practices, he might possibly

have suffered death from the loss of blood before medical aid could be summoned. As it was, his fellow students shut off the flow of blood by applying external pressure to the proper places, and fortunately prevented a more serious result.

One who is so careless of the rights of others as to use a dangerous instrumentality while incapacitated by drink, as here shown, invites the consequences. He must pay the penalty.

The defendant has had a fair and impartial trial, and the judgment of the district court of Tulsa county is hereby affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.