Richard STRAHAN, Plaintiff In Error,

v.

The STATE of Oklahoma, Defendant In Error.

No. A–12150.

Criminal Court of Appeals of Oklahoma.

June 1, 1955.

E. Blumhagan, Watonga, for plaintiff in error.

Mac Q. Williamson, Atty Gen., James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Richard Strahan, plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the district court of Major County with the crime of assault with a dangerous weapon, a felony, carrying punishment on conviction of not exceeding five years imprisonment in the State Penitentiary, or imprisonment in the county jail not exceeding one year. Tit. 21 O.S.1951 § 645. He was tried before a jury and found guilty of the included offense of assault and battery, and his punishment fixed at thirty days in the county jail, and a fine of $75. Tit. 21 O.S.1951 § 644. Appeal has been perfected to this court.

For reversal two specifications of error are presented, and being that:

"1. The Court erred as a matter of law in permitting the automobile window crank to be introduced in evidence, as a dangerous weapon, and erred as a matter of law in submitting the charge of assault with a dangerous weapon to the jury.

"2. The punishment imposed is excessive."

A summary of the pertinent evidence is necessary for solution of the issues. Important undisputed evidence has been summarized by counsel for the defendant as follows:

"That the defendant at the time in question was a boy 17 years of age, residing at Canton in Blaine County, Oklahoma; that on or about the 13th day of June, 1954, at the conclusion of a day's work, the defendant in company with several other boys somewhat younger that he, drove in a Mercury automobile to the city of Fairview with the intention of going swimming at the municipal swimming pool there; that after the boys had gone swimming and before starting back to Canton, Oklahoma, they went to a place where ice cream was sold in Fairview, and there each purchased what must have been an extremely large portion of ice cream; that while engaged in consuming this ice cream, the defendant and his companions drove along the streets of Fairview; that while so driving along the streets of Fairview, one of the boys in the car driven by the defendant, and sitting in the back seat, finding himself in possession of more ice cream than he could consume, tossed the unused portion of his ice cream out of the car; that the ice cream tossed out of the car struck the automobile of Ray Allen Woods, the prosecuting witness, who was then on the streets of Fairview; that the prosecuting witness lives at Fairview and was at that time 19 years of age, and was on this occasion being accompanied by several other boys all of about the same general age as the prosecuting witness."

The record further shows that the Strahan car seconds later was driven back by the point where Ray Allen Woods was standing by his car, then parked in front of Smith's Drug Store, Fairview, being the

same place where it was when the ice cream cone was tossed against the car, and Ray Allen Woods picked up the remains of the ice cream cone and threw it back at the Strahan car. Soon thereafter Woods and his. friends commenced driving around in the Woods car, and thereafter at a time when the Woods car was going north and the Strahan car was going south, the cars passed at an intersection where there was a stop sign, and as they passed, words were exchanged between Woods and Strahan. There was evidence on the part of the State that Strahan asked Woods if he wanted to fight, and that Woods answered "Yeah" in a joking manner.

The defendant's version is that at the stop sign or light, he said: "Woods are you looking for trouble?" and that Woods answered "Yes", and defendant then said, "Well, if you are, why don't you follow us out of town here?" That defendant proceeded on slowly and Woods drove around the block and followed him a few blocks and then turned off, and defendant then turned to look for Woods, and finally located his car parked on the south side of the DeLuxe Cafe, about four or five cars from the corner; that the Woods car was parked at an angle and that Strahan parked parallel to the curb, and behind the Woods car. What followed thereafter determines the disposition of the issues raised.

Ray Allen Woods' version was that Strahan "hollared" at him and called him a dirty name, and Woods then said to Strahan, "You are the same", after which defendant got out of his car and came around the front of it and on around. to the Woods car, and asked Woods what he called him, and Woods said, "You are the same", and Strahan said, "Same what?" Whereupon Woods repeated the name that Strahan called him, Strahan then hit him on the jaw. Said Woods:

"Well then he hit me with his fist and some object in his hand.

"Q. Were you able, in that brief moment, to tell what material that object was made of? A. Well, it was something hard—metal.

"Q. Then could you tell the jury any result on your face? A. Well, it cut my face up, and broke my jaw.

"Q. Now tell the jury what happened at the time he struck you, as you have described? A. Well, he hit me, and it knocked me clear down on my knees,—well, it just practically knocked me out—I don't hardly recall anything else too clearly until Lou Conley [town officer] come up there. I do remember him coming up, and I know it knocked my bridges loose and I had them in my hand and I think I handed them to somebody in the car or something. :

"Q. Then what happened? A. Lou finally come up and I didn't know, I think I said,—I told him to arrest Richard, and—I don't know,— he said 'break it up boys', or something, and anyway, he took us in his car."

Witness Woods further stated that his face was bleeding and he asked the officer to put him out at a doctor's office and he let him out at the local hospital; that they X-rayed his jaw, sewed up some cuts on his eyes, gave him some shots to ease the pain and took him to the hospital at Enid, where he remained for 16 days. That he had to go through surgery two or three times. They wired his jaw, but it slipped out two times, and finally had to make an incision. Witness denied ever striking Strahan, and stated that he kept trying to protect his face from the blows from Strahan, and he did not know how many times Strahan hit him.

Max Jordan testified that he lived in Fairview and had lived in the county all his life. He testified substantially as had Ray Allen Woods; said that he was with Woods during the ice cream cone throwing; said that the defendant Strahan eventually parked his car back of the Woods car so Woods could not back out. That he stood in the Woods car, which was a convertible with the top down and saw everything that happened; that Strahan got out of his car, went around the front and approached Woods, called Woods a vile name, (which

the court does not care to print); that there were further words and that defendant hit Woods with his right fist and witness could see that defendant had an object in his right hand, which object was a sort of window handle off the car, and that this metal object was in the defendant's hand he used in hitting Woods, which was the defendant's right hand.

Witness Jordan identified State's Exhibit A as having the appearance of the object which was in defendant's hand at the time he hit Woods, and testified that Woods' face was bleeding considerably from the blows. He further testified that as Woods was falling that defendant was continuing to hit him with his right hand in which the object was held.

Jordan said that he then called to the defendant and said: "If you are going to fight, why don't you fight fair?" That defendant made no reply, but did thereupon turn and throw the handle into the Strahan car.

Witness Jordan further testified that during the fight defendant's brother, Ronald Strahan, was standing directly behind the Woods car and that Ronald also had a door handle, or window crank, in his hand and that he held it up so the boys in the Woods car could see it and said: "None of the rest of you boys jump in."

Claude Mikulesky and Johnnie Medley, two other young boys who were in the Woods car, testified substantially as Jordan as to the facts of the fight; and L. E. Conley, night watchman, testified to arresting the fighters and later taking Woods to the hospital. Witness Conley further testified that he investigated the claim by some of the boys in the crowd that some object had been used in the fight and found the metal handle that he identified, State's Exhibit A, and said that he showed it to defendant. Said he: "Yes, and I asked him [defendant] about it, if he used that handle, and he said 'No', that he had that in his left hand and he hit him with his right hand, and then threw it in the car."

Defendant's version of the actual fight was that after he located the Woods car and stopped in the rear of it:

"A. Then I asked him, I said, 'Woods, aren't you going to come out of town,—what is the matter, are you chicken', and he says, 'What is the matter with right here', and I said, 'Yow, the night watchman is standing right there on the corner', and he said, 'Well'—either him or somebody in the car said, 'Well, he will make a good referee.'

"Q. Uh, huh, now then, was there any name calling between you and Ray Allen? A. Yes, sir, then I told him I thought he was a [omitted as obscene].

"Q. Yes, sir,—and what did he say? A. He said, 'Well I think you are the same'.

"Q. Then what happened? A. Then I opened the door and I got out and I reached back in there and I picked up this door handle with my left hand, and I walked around the car and I met him about half way between my car and his car."

Defendant said that he thereafter hit Woods with his right hand once; that he did not have anything in his right hand, but had the window handle in his left hand and after hitting Woods once, tossed the handle back in defendant's car. He said Woods then handed his bridgework to another boy and had his head down and ran into the car door as one of the boys was opening it. He claimed that Woods hit him and bruised his lip. He said they then clinched and the officer came up and told them to break it up.

On cross-examination of defendant the following appears in the record:

"Q. Now as a matter of fact, you walked over to where Mr. Woods was standing and without any warning of any kind just slugged him in the jaw, isn't that correct? A. Not exactly; I asked him what he called me.

"Q. And then you got the expected answer that you was wanting and you slugged him, isn't that a fact? A. I don't know whether it was expected or not.

"Q. Well, you was in there promoting an excuse to hit him, isn't that right? A. Well, maybe so.

"Q. That is right, you was wanting an excuse to hit him, and then you did hit him, didn't you? A. Yes, sir."

There were other witnesses who testified in defendant's behalf concerning the facts of the fight. It may be said that the witnesses for the State unanimously testified that defendant had the window crank in his right hand when he hit Ray Allen Woods, but to the contrary the defendant and his witnesses testified that defendant had the crank in his left hand and did not strike Woods with the hand containing the piece of metal.

According to the State's witnesses Woods at no time hit defendant, but the defense witnesses claimed that he hit him at least once in that defendant suffered a split lip. There was some evidence that defendant in the scuffle in the narrow passage between the cars pressed against the side of the cars.

Considering the first proposition of error set out heretofore, in light of the above evidence, we have for determination whether or not the court erred in admitting into evidence the window crank in question. It is argued that the window crank is not a dangerous weapon, and that the evidence failed to show that it was so used as to entitle it to such classification.

The witness Ray Allen Woods was a patient at an Enid hospital for some sixteen days on account of a shattered jaw. Bone was shown to have been working out to the inside of his mouth up to about the time of trial, some 134 days after the injury.

The contention of error is apparently predicated on the testimony of Dr. David H. Smith, who made an office examination of Ray Allen Woods immediately following the fight, but who sent him on to the hospital at Enid for further examination, and, as it turned out, for actual surgery.

Dr. Smith had said concerning circumstances of Woods coming to his office: "He [Woods] pointed to his jaw and was trying to tell me something was wrong with his jaw and his face, and I couldn't understand him. I asked him what had happened and he made signs that he had been in a fight, so I sat him down there and examined him". He further stated that Woods had "a laceration over his left eye, and a laceration under his left eye, and the mandibular was broken on the left side."

The doctor gave it as his opinion that the jaw could have been broken with a bare fist. He was asked:

"In other words, you didn't find any injuries on Ray Allen Woods which in your judgment were inflicted by an instrument of this kind [State's exhibit A], is that right? A. No, sir.

"Q. You didn't find any? A. I didn't find any, unless there is some other way—I don't see how that could be manipulated."

On cross-examination Dr. Smith admitted that the cuts about the eye could have been made with a sharp instrument. Witness could not remember whether he had told the injured boy's mother after he examined her son that the indications were that the injury had been inflicted with a hard, sharp instrument. He said he could not say for sure. Mrs. Woods so testified. Witness was further asked:

"Q. This instrument, if held in the hand to strike a person with, it could be a dangerous instrument, couldn't it? A. Yes, sir.

"Q. And it would produce serious injuries? A. Yes, sir."

State's Exhibit A, a metal window crank, was wired to the casemade and we have examined it. Held in one's clinched fist, the knob will protrude at one side of the hand, and a rough male portion (that attaches to the car window) at the other.

Tit. 21 O.S.1951 § 645, under which the within prosecution was commenced, has been by this court construed many times. There is no dispute as to the law. Counsel for both State and the defense cite the same cases. The problem is simply in the application of the law to the facts.

■ In Beck v. State, 73 Okl.Cr. 229, 119 P.2d 865, this court said that an automobile might be so used as to become a dangerous weapon, and in Tipler v. State, 78 Okl.Cr. 85, 143 P.2d 829, it was held that a leather strap might be so used as to become a dangerous weapon. See also Smith v. State, 79 Okl.Cr. 1, 151 P.2d 74, cited by defendant, where a dangerous weapon is defined. And Jones v. State, 46 Okl.Cr. 187, 287 P.2d 1073, involving knocking person unconscious and stomping with heavy boots; Bean v. State, 77 Okl.Cr. 73, 138 P.2d 563, where use of fist was involved, charged with assault with intent to kill, but convicted of the lesser offense of assault with a dangerous weapon.

In the Beck case, supra [73 Okl.Cr. 229; 119 P.2d 868], we said:

"We have many articles which are not dangerous weapons per se, but which from the manner of their use may become dangerous weapons. A chair, a stick, a clock, and many other articles are not dangerous weapons per se, but the manner of their use might make them a dangerous weapon."

See 6 C.J.S., Assault and Battery, § 127, p. 999 reading in part:

"Whether an instrument used in an assault is a deadly weapon is a question of law, where there is no dispute about the facts; but, where the instrument used is not one declared by statute to be a deadly weapon or where its character, whether dangerous or deadly, or not, is doubtful, or where its character depends on the manner in which it is used, the question whether that was an assault with a dangerous or deadly weapon is to be submitted to the jury."

And see 6 C.J.S., Assault and Battery, § 119, p. 985, reading in part:

"The weapon with which it is alleged the assault was committed is admissible in evidence, where it has been properly identified."

■ From a study of the evidence in the record and particularly that set out herein, it is our conclusion that the court did not err in admitting in evidence the car window crank in question, there being evidence that it had been held in defendant's right clinched fist which was propelled with such force as to shatter the jaw of the prosecuting witness. And while the jury saw fit to believe the evidence of defendant and his witnesses who denied that defendant held the metal crank in his right hand as he struck defendant, or used it in the fight, nevertheless there was sufficient evidence before the jury to have supported the charge if the jury had believed the evidence of the State's witnesses.

■ Obviously the metal window crank was not a dangerous weapon per se, but it is clear that it could have been, whether it was or not, used in such manner as to have come within the definition of a dangerous weapon. Here a question of fact was involved, and it was decided in favor of the defendant. The defendant was found guilty of the lesser and included offense of simple assault and battery.

■ The proposition that the punishment imposed by the jury is excessive, as is clear from the evidence summarized, has no basis for support. Without doubt the defendant, and by his own admissions, was the aggressor. He admitted having the metal piece in his left hand, which at least demonstrates that this was more than an ordinary school boy fist fight, which under ordinary circumstances parents and officials might not deem worth noticing. Here the injuries suffered by Ray Allen Woods, their nature, etc., cannot be overlooked or minimized. At this point, a decision on appeal by force of the appeal will act as a precedent for application to future problems. And however much judges as individuals may sympathize with young people when it comes to meting out penalties for misconduct, nevertheless they must in a case with facts as here, be careful not to condone and lend encouragement to physical encounters and conduct such as reflected in this case. The problem presented by this case of groups of young persons driving about in motor vehicles, and with inhibitions removed by one cause or another,

and engaging in fights, is a matter provoking nation-wide concern.

The jury was most lenient, and the verdict and judgment by force of the facts must be, and is, by this court affirmed.

JONES, P. J., and BRETT, J., concur.