Walter MATIN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12598.

Criminal Court of Appeals of Oklahoma.

Dec. 10, 1958.

Rehearing Denied Dec. 31, 1958.

John W. Tillman, Fred A. Tillman, Don Hampton, Pawhuska, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

The record reflects that on the date in question a 9 year old boy and his companion had left the Mullins School after school was dismissed. They were walking along the side of Haines Avenue in the city of Hominy, Oklahoma. The street was flat and without curbs. The 9 year old boy, Ronald Blankenship, was walking along parallel to the street, but off on the edge, pushing his bicycle. While walking along in this manner, a car came up behind him, knocked the bicycle some distance and ran over the boy Blankenship, seriously injuring him. The car continued on down the street and out of sight. The companion boy, Donald Alexander, testified that he did not see the car until it hit his companion and that the car was black and white. The victim, Ronald Blankenship, testified but did not remember any material things about the accident. A witness by the name of Orville Spencer testified that he was driving near the Mullins school in a '46 pickup, approximately 3:30 or 4:00 p. m. and with him was a man by the name of Oril Duncan. That he followed a black car with two men occupants. The car was being driven in an erratic manner and that the car hit the little Blankenship boy 6 to 8 feet off the edge of the street, rolling him under the car. The car drove on and Spencer let Duncan out at the scene of the alleged crime. As Spencer circled the block he saw the same car backing up after having run through a stop sign and upon a curb. Spencer called the highway patrol and after the occupants of the black car were arrested and taken

to the police station, Spencer went to the station and observed the two occupants of the car, and testified they were the same persons whom he had seen in the car and he learned their names were Walter Matin and Glen Connolly. The testimony reveals that Walter Matin was a full-blood Indian past 60 years of age. The county attorney in this respect asked:

"Q. Could you tell which one of those men were driving the car on that occasion when you looked at them at the police station? A. Yes, sir. It looked like the big guy.

"Q. And which one of them was the big guy? A. The Indian guy."

Upon cross examination defendant propounded the following questions and received the following answers:

"Q. What did this man look like that was driving it? A. Well, he was just a big guy is all I can say.

"Q. Stand up, Walter, will you please? (talking to the defendant and defendant now stands up) Do you call this a 'big' guy? A. Well, pretty good size.

"Q. He isn't, is he, Mr. Spencer? A. Well, he's pretty good size.

"Q. He isn't a big guy, though, is he? A. Well, no, he's not what you'd call a big one, but he's pretty good size.

"Q: Well, you've just told this jury that it was a big guy, haven't you? Well, was it—was it a big guy or not? A. Yeah, it was a big guy.

"Q. But it wasn't this man, then, was it—nor you can't tell this jury that it was this man driving that car, can you? A. No, not just definitely I wouldn't—

"Q. You wouldn't swear to that, would you, Mr. Spencer? A. No, sir, I just wouldn't definitely swear to it."

Spencer further testified that he observed defendant after the arrest and in his opinion defendant was drunk.

Oril Duncan, who was in the car with Spencer, testified he noticed the black car weaving from one side of the road to the other and saw it hit the little boy, but could not identify the driver, but stated there were two men in the car; one man bald headed and one man wearing a hat and the man wearing the hat was driving. He further testified that from the time he first saw the black car until it hit the boy that no other cars passed going the same direction, which was going north, but he did see one pickup and one cattle truck coming from the other direction going south along by the Mullins school before the boy was struck.

Lester Graham testified he had lived in Hominy all of his life and knew Walter Matin, the defendant, and also knew Glen Connolly. That he recalled the time of the accident and was driving a pickup going south and met a car being driven by Walter Matin about 2 or 3 blocks south of the Mullins school. He said he distinctly remembered seeing him because he was forced to pull over in order to miss him and that Walter Matin was going north. He estimated the time between 4:30 and 5:00, but could have varied 30 minutes to an hour and on cross examination stood on the time being 3:30 until 4:00.

He further testified that there were two people in the car but he couldn't swear as to the identity of the other person. That the car was going pretty fast.

Jack Elderidge testified he lived at Hominy. That he remembered when the incident occurred, and on that date between 3:30 and 4:00 was north of the Mullins school going south and met a black Ford car coming north and it was in the middle of the street. The witness stated he pulled over to let the car go by as he didn't want to be hit. That he observed two men in the car and identified the defendant Walter Matin as the man driving the car. These questions were asked the witness and answers returned:

"Q. Did you see the people that was in the car? A. Oh, yes, I seen there was two people in there.

"Q. Did you observe the person that was driving the car and under the wheel? A. Yes, I noticed who was driving. I noticed him.

"Q. Have you seen those people, or did you see them later somewhere else? A. Yes.

"Q. Do you know who the driver of that car was—the name of that person? A. Yes, I know him.

"Q. Who was that, please?· A. It was this feller over here. (pointing)

"Q. You're pointing to Walter Matin, the defendant? A. Walter Matin, with glasses on there.

"Q. Did you know his name at the time you saw him? A. No, I didn't.

"Q. Do you know who the other occupant of the car was? A. I know him, but at that time I didn't recognize him because I didn't notice him—he was settin' opposite the driver and I didn't get a good look at him, as well as I did the driver at that time."

He testified he met the black car about 1½ blocks north of where the boy was hit, and he drove up to where the boy was lying and had met no other cars between where he met the defendant where the boy was lying. He positively identified the defendant as the driver of the car and stated the defendant was wearing glasses. He did not see the defendant's car hit the boy.

Mr. Silar, service station operator, testified that Glen Connolly and another man whom he did not know at the time, pulled in his station in a black car on the date in question. That Connolly came in the station after some cigarettes. When the two men drove off they ran over a little picket fence, knocking it down. He fixed the time at 4:30 or 5:00 o'clock. After driving from the station they were gone about 15 minutes and returned and upon the return Connolly was driving. The sheriff and deputy sheriff were there and took defendant to the police station.

Glen Connolly testified that he joined Walter Matin at a beer parlor where they consumed beer and became intoxicated. Connolly admitted that he and defendant were both pretty drunk. They left the beer tavern and he drove defendant's car about 8 miles into the country to a Mr. Horine's place to get a check, and no one was home. When they left the Horine place, the defendant, Walter Matin, was driving. Connolly further stated he remembered nothing after leaving the Horine place until they were west of Hominy about 2 or 3 blocks. That when he came to himself, Matin, the defendant, was driving and swerving from one side of the road almost hitting at least two other cars. That he then took the wheel from the defendant and started back to Hominy when both were apprehended by the police.

Vernon Arndt testified his wife operated the TeePee Bar and Beer Parlor and he was present at the tavern when Connolly and defendant were there. That they had 3 or 4 beers and as far as he was concerned they were sober.

Troy Horine stated he owed Connolly money on the date in question. That he was not home that afternoon and did upon his return see some beer cans in his yard and lot.

Guy Reed supported the testimony of Mr. Silar by stating he was at the D-X service station on this date and saw Connolly and the defendant in the vicinity of 4:00 and defendant was under the wheel of a black '56 Ford. This testimony was substantiated also by Charles Lachrone who was riding with Reed. He gave Connolly two cigarettes and observed he was intoxicated and that defendant did not get out from behind the steering wheel. The time was set between 4:30 and 5:00. He testified on the way home they passed the scene of the accident and returned to the station and while there the black car with Connolly and the defendant drove in from the west and were apprehended by the officers.

Officer Bacus testified he and Sheriff Streetman made the arrest. Connolly and defendant were intoxicated. That defend-

ant was in bad condition, couldn't talk or walk without assistance, was awfully drunk. That they were taken to the jail. That he asked defendant if he knew he had run over a child and defendant said he did not know. Bacus informed defendant, "Well, you run over a boy up on the street there—why didn't you stop?" Defendant replied, "Well, he shouldn't have been on the street." However, Officer Bacus was plain to state the defendant was too drunk to be in his right mind. He further testified to examining the car which revealed the dented headlight rim which showed a portion of red paint the same color of the bicycle which the little boy was pushing at the time he was run over. Also, blood stains and hair were apparent beneath the car. Percy Howard, who held the position of police judge at the time, testified he was present at the jail and observed the defendant, saw him fall out of one chair and then another. In his opinion defendant was very drunk.

Sheriff Streetman testified about the same as Deputy Bacus as to the arrest, the drunken condition of the defendant and the evidence of paint, blood and hair on the car. He admitted readily that defendant was looplegged drunk and the following morning called for medical assistance because of being a diabetic. The medical assistance he asked for was insulin. Eldon Batson, an employee of the Ford garage, verified that the car was examined after being raised on a jack and red spots were found under the car and on the rim of the headlight. The state rested and defendant's demurrer was overruled. The defendant testified in substance that he was a diabetic and had regularly taken insulin for a period of 17 years. That he became intoxicated with Connolly at the TeePee Tavern and Connolly was driving when they left the tavern for Horine's place and he remember-er nothing else until he was being taken to the jail by the arresting officers. He did not believe that he was driving the car at the time of the incident because he was unable to drive. That he was wearing white glasses on the date in question. The defendant's two daughters testified that they visited their father the next morning after his arrest and saw Mr. Connolly and he had in his hand a pair of dark sun glasses. On rebuttal, Connolly denied this and Sheriff Streetman testified that Connolly had no glasses at the time he was placed in jail. Both sides then rested.

The defendant in his brief makes numerous contentions of error but relies in his brief upon two assignments. He first contends that the court erred in refusing to give a requested instruction relative to circumstantial evidence. The second contention complains of the court's failure to give a requested instruction on the lesser offense of assault and assault and battery.

The first assignment of error presents a very close question of law and would have called for reversal had it not been for the direct testimony of witness Orville Spencer who was an eyewitness to the alleged crime. He saw the boy hit by the car driven by a large man with a passenger. He shortly thereafter, at the jail, identified the Indian man whose name he learned to be Walter Matin, as the driver of the car that hit the little boy, and upon trial, being asked whether or not he recognized either of the men as the driver of the car, he identified the Indian man as the driver. The defendant was full-blood Osage Indian. Upon strenuous cross examination of the witness, his testimony was weakened by his statement that he would not definitely swear that the defendant on trial was the driver. Nevertheless, his testimony was fairly positive that he did identify the defendant at the jail shortly after the tragedy and recognized him as the driver of the car involved. No doubt the witness was more capable of identifying the defendant minutes after the crime than he was at the time of trial some 8 months later. It is the opinion of the court that his testimony identifying the defendant after the crime was direct and removed any question of relying solely upon circumstantial evidence.

■ The defendant cites as authority in support of his contentions the case of Knight v. State, Okl.Cr.App., 118 P.2d 255, and Breedlove v. State, 49 Okl.Cr. 428, 295 P. 239. Though these cases correctly state the law, they are not applicable herein.

The Breedlove case, supra, says:

"Where circumstantial evidence alone is relied on for a conviction, it is the duty of the court to instruct on the law applicable thereto when requested to do so by defendant."

"When the evidence relied on for a conviction is wholly circumstantial and a proper request for an instruction on circumstantial evidence is made and refused by the trial court, such refusal is reversible error unless the evidence of guilt is so conclusive that this court can say that the refusal to give the requested instruction did not affect the verdict."

Likewise, the Knight case, supra [118 P.2d 256], cited by the defendant says:

"Where the evidence is wholly circumstantial and accused requests court to so instruct the jury, it is error not to do so."

We concede these cases properly state the law, but are only applicable where the state relies wholly upon circumstantial evidence. Under the previous holdings of this court where there is also direct evidence supporting the circumstantial evidence, it is not error to refuse to give such an instruction. However, we do feel that where the preponderance of the evidence is circumstantial, it would be the best practice for trial judges to give the utmost consideration to defendant's request for such an instruction. In so doing, it is likely that an appeal could be avoided, and in the instant case this court can see no way in which the state would have been damaged. The evidence in the case is sufficient, if believed by the jury, to justify a verdict of guilty. The maximum penalty provided under the statute could have been 5 years in the state penitentiary. The defendant's penalty was assessed at 90 days in the county jail, which no doubt was a lenient assessment under the facts of the case. In examining the record in its entirety, we do not find that the defendant was prejudiced by the court's failure to give an instruction on circumstantial evidence.

■ We find no merit in defendant's second contention of error. The defendant was charged with the crime of assault with a dangerous weapon under Title 21, O.S.A. § 645:

"Every person who, with intent to do bodily harm, and without justifiable or excusable cause commits any assault and battery upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots or attempts to shoot at another, with any kind of firearm or air gun or other means whatever, with intent to injure any person, although without intent to kill such person or to commit any felony, is punishable by imprisonment in the penitentiary not exceeding five (5) years, or by imprisonment in a county jail not exceeding one (1) year."

This court has held in the case of State v. Hollis, Okl.Cr., 273 P.2d 459:

"An automobile, when used in such a manner as is likely to produce death or great bodily harm, is a 'dangerous weapon.'"

Also, see Beck v. State, 73 Okl.Cr. 229, 119 P.2d 865.

■ The defendant contends that the court should have instructed on the lesser offense of assault and assault and battery, and in support thereof argues "How can it be assumed that by his negligent acts, when he was unconscious, that there could be any intent inferring from said conduct to commit the offense of assault with a dangerous weapon?" However, we find no merit in this argument. It is admitted that the defendant was looplegged drunk. The testimony is beyond question that he was weaving from one side of the road to the other and almost collided with two other cars. He admits being so intoxicated that he re-

members nothing of the occurrence. From the entire record it is conclusive that defendant's car was being driven in a manner forbidden by law in a negligent and dangerous manner, subjecting to danger or sudden death every person within, on, or close to the road upon which defendant was travelling. Though intent is an essential element of the crime charged, it was supplied by the culpable negligence of the defendant in dangerously operating his vehicle in a voluntary drunken condition.

It was said by this court in the Beck case, supra [73 Okl.Cr. 229, 119 P.2d 865], that:

"Defendant was properly convicted upon information charging assault with a dangerous weapon where the proof showed he was driving while in a drunken condition on a crowded city street at a speed of 50 miles per hour, and struck prosecuting witness with the automobile while attempting to turn a corner at this speed, since the unlawful manner which defendant was operating the automobile takes the place of and supplies the intent to commit the assault."

We are indeed conscious of this court's holding that the jury should be instructed upon every degree of assault which the evidence in any reasonable view suggests. In this case, however, elements of the crime as alleged were well proven and a reasonable view of the evidence does not suggest assault or assault and battery.

The automobile was a dangerous weapon by reason of the manner in which it was being driven. With it an assault was consummated upon the prosecuting witness, by the defendant, thus the crime of assault with a dangerous weapon perpetrated. The only defense was a denial by defendant of driving the car as that he did not remember. We do not feel that the defendant was prejudiced by the court's failure to instruct on any lesser offense.

The judgment and sentence of the lower court is therefore affirmed.

BRETT, P. J., and POWELL, J., concur.