Arling ECKHART, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12236.

Criminal Court of Appeals of Oklahoma.

Jan. 11, 1956.

Charles W. Jennings, Dwight Malcolm, Lawton, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

The defendant, Arling Eckhart, was charged by an information filed in the District Court of Comanche County with the crime of assault with a dangerous weapon, it being alleged that on September 10, 1953, Eckhart did feloniously shoot at one Victor Paddyaker with intent to injure and do bodily harm to Paddyaker; was tried, convicted and sentenced to serve 9 months in the county jail.

Two propositions are presented: 1. The evidence was insufficient to sustain the conviction. 2. The verdict was the result of passion and prejudice engendered by improper argument of the county attorney.

This prosecution was instituted under the provisions of the statute which made it a felony to shoot or attempt to shoot at another with a firearm with intent to injure such person and without justifiable or. excusable cause. 21 O.S.1951 § 645. The evidence of the State showed that four workmen had been repairing the roof to the Zak building in the City of Lawton for two or three days before September 10, 1953. The defendant and his wife occupied an apartment in said building immediately under the place where the roof was being repaired. Defendant and his wife were both in ill health, the defendant having been forced to retire from working because of two severe heart attacks which he had suffered. On the day preceding the date of the alleged assault, defendant had an argument with the workers because they had disconnected the air conditioner from the building.

About 5:30 a. m. on September 10, 1953, the complaining witness Paddyaker and three other workmen went on the roof to resume their work. The building has two levels, one adjacent to the apartment occupied by the accused and his wife and the other level on the roof over the apartment of accused. The workmen commenced tearing off the roof and a considerable amount of plaster was knocked from the ceiling of defendant's apartment and fell on the bed which he occupied.

Paddyaker testified that he saw a light turned on in defendant's apartment. A voice said, "We will have no more of this early morning work." About that time a shot was fired from defendant's apartment and according to Paddyaker it struck the brick wall close enough to him that a part of the bricks shattered by the bullet struck him in the face.

The other workmen testified that defendant appeared in his underwear with a rifle in his hand and ordered them off the roof.

Defendant testified that he was awakened by plaster from the ceiling hitting him on the head and falling on the bed; that he could hear some one on the roof. That he turned on the light, picked up his .22 rifle thinking there was a prowler on the roof. That he "flipped the block to see if the rifle was loaded" and it accidentally discharged. That it had accidentally discharged on other occasions when he would slip the bolt. That he did not see Paddyaker at all that morning, but after the gun had discharged he did see the other workmen on the roof and ordered them to leave. That it was the first morning they had ever come to work that early in the day. That he had some difficulty the day before with the workmen because they had disconnected the air conditioner. That he had the entire upstairs of the building leased. That there were offices in the front of the building and he had some tenants who were complaining because of the disagreeable heat when the air conditioner was disconnected.

It was stipulated that according to the records of the weather bureau the sun rose at 6:13 a. m. the morning of the alleged assault.

The deputy sheriff who went to defendant's apartment immediately after the complaint was made by the workmen testified that he found paint and plaster in both rooms of defendant's apartment and plaster on the bed. To refute the idea that defendant had aimed the gun and fired at the prosecuting witness, the deputy sheriff testified that he saw the bullet hole in the screen of defendant's door and that it was about hip high. However, this did not conflict with the statement of Paddyaker who testified that when he saw the defendant after the light was turned on he had the rifle about level with his right hip. The arresting officer testified that when he arrested the accused and advised him why he was being arrested that accused stated he "should have shot him."

This is another case which may be unimportant except to the parties involved, but which presents a problem which is very difficult to decide. Defendant had just cause to be extremely agitated because of the early hour at which they started working on the roof. None of the workmen were able to give any satisfactory reason as to why they were starting to work so early on that particular morning. The air conditioner had been disconnected by the workmen the preceding day and apparently the time at which the workmen had started to work was about the coolest period of the day and a time when most humans would be trying to catch a few hours of sleep during hot weather. The situation was further complicated by the cardiac condition from which the accused was suffering which was detailed by Doctors Angus and Hood.

Counsel for the accused insists that the only reason the jury returned a verdict of guilty was on account of prejudicial argument of the county attorney where he referred to the defendant as a rich man and the prosecuting witness as a poor boy and asked the jury to demonstrate by their verdict that a poor working boy had as much chance before a jury as a rich man.

The record is not sufficient to sustain the defendant on this point. It merely shows that counsel for the accused during the course of the argument of the prosecutor made the following objection: "I wish to object to an argument of a poor boy and a rich man." The court stated, "I believe there is no evidence whatsoever as to the financial condition of the complaining witness," and the prosecutor stated, "I apologize that that implication was left." No motion for mistrial was made and no exception to the alleged misconduct was taken. In Easterling v. State, Okl.Cr., 284 P.2d 741, 742, it was held:

"To properly preserve the record for presentation of alleged improper argument or alleged misconduct of trial court during the closing argument of the county attorney for consideration on appeal, counsel should object and except to the alleged argument or misconduct and move for a mistrial. Where this is not done an assignment of error based upon the alleged improper argument of the county attorney or alleged prejudicial remarks of the court to the jury will not be considered on appeal unless the Criminal Court of Appeals can see that such alleged misconduct was so grossly prejudicial that it deprived the accused of his fundamental constitutional right to an unprejudiced trial. Article 2, Section 6, Oklahoma Constitution."

It is our conclusion that the evidence is insufficient to show that the defendant shot at the prosecuting witness with intent to injure him. If defendant could have seen Paddyaker and had wanted to injure him, he could certainly have shot him as he was only standing a very few feet away from defendant's apartment. Defendant stated it was dark outside of his apartment and he could not see any one until he walked out of his apartment and saw the workmen on the roof. We do not believe defendant intended to shoot the prosecuting witness with intent to injure him nor are we impressed with defendant's story that the gun accidentally discharged. Rather, we think the accused was provoked and fired the shot in the air to scare the workmen and it certainly had that effect. The evidence was sufficient to show the ac-

cused was guilty of a simple assault. The maximum punishment for assault is 30 days in the county jail and a fine of $100 which we feel would be a just sentence in this case.

It is therefore ordered that the judgment and sentence of the District Court of Comanche County be modified by reducing the punishment from 9 months in the county jail for assault with a dangerous weapon to a term of 30 days in the county jail and a fine of $100 and costs for the included offense of simple assault and the judgment and sentence as thus modified is affirmed.

BRETT and POWELL, JJ., concur.