Donald Lee DANIELS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–77–481.

Court of Criminal Appeals of Oklahoma.

Jan. 25, 1978.

Ralph Samara, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Givens L. Adams, Asst. Atty. Gen., for appellee.

## OPİNION

BUSSEY, Presiding Judge:

Donald Lee Daniels, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–76–3631, for the offense of Assault and Battery with a Deadly Weapon with Intent to Kill, in violation of 21 O.S.1971, § 652. His punishment was fixed at five (5) years' imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Vervia Mae Daniels testified that she was formerly married to the defendant and divorced him on September 10, 1976; that on September 17, 1976, she left her parent's home at 4:30 a. m. to go to work. She was driving on Portland when she observed defendant drive up behind her

almost striking her rear bumper. Defendant pulled up beside her and started shooting a gun toward her. She ducked down and defendant went around her and disappeared. She proceeded down Portland toward Interstate 40. Just as she approached the exit ramp, defendant struck her broadside with his automobile. Defendant fired through the windshield of his car at her. She jumped out of her car and attempted to run. The defendant continued to fire at her. She was shot on the left side of her body. Defendant forced her into his car stating, "I've got somebody I want you to see." [Tr. 15] Defendant drove around for approximately an hour and a half. He then got out of the car and she drove to a Holiday Inn, where an ambulance was called. She was hospitalized for one week.

Dr. Robert Spector testified that he observed Vervia Mae Daniels in the emergency room on September 17, 1976. She had a gunshot wound on her left side. The projectile severed vessels causing the lung to collapse.

George Williams, Vervia's father, testified that she lived with him on September 17, 1976. He arose at approximately 4:00 a. m. to move his car so she could back out of the driveway. He observed defendant drive by the house.

Officer Gary James testified that on September 17, 1976, at approximately 12:30 p. m., he went to a location near I–40 and Portland. He identified a tube of lipstick, a hub cap and certain debris he collected at the scene. He photographed the scene and Vervia Mae Daniels' vehicle.

Detective Miles Houseburg testified that on September 17, 1976, at approximately 7:45 a. m., he contacted Vervia Mae Daniels at the Norman Municipal Hospital. He proceeded to a salvage lot and observed a 1975 silver Chevrolet Caprice automobile, license no. XD–3813. He recovered a green blouse, which had previously been identified by the victim, from the interior of the car. There was a bullet hole directly above the steering wheel of the vehicle. He further observed stains on the front passenger seat which appeared to be blood.

Jimmy Hughes testified that he was employed with the Motor Vehicle Division of the Oklahoma Tax Commission. He identified a certified copy of a vehicle registration which reflected that the defendant owned a 1975 Chevrolet two-door Caprice, license no. XD–3813.

Defendant testified that on the evening of September 16, 1976, he went to sleep in his car in Cappin Park. He had been sleeping in the park for approximately three weeks. He awakened sometime during the night to find two men and a woman in the front seat of his car. He had lumps on the top of his head, and was bleeding. He lost consciousness and when he came to, he found himself in a big field by two lakes. He walked to a paved road where he was picked up by a man in a pickup truck. The man took him to his aunt's home in Purcell. His aunt got him a ride back to Oklahoma City. He testified that the last time he saw his former wife was on September 10, 1976, the date of the divorce.

Kenneth McCary testified that he went with defendant's father to Norman to pick up defendant's car. He did not see any blood inside the car. Defendant came to his sister's house in Oklahoma City on the morning of September 17, 1976. Defendant had lumps on his head and was irrational.

Eileen Sutton testified that she observed the defendant on the morning of September 17th. He was incoherent and had lumps on his head. She called the police department at about 11:00 a. m. and reported defendant's car was missing.

Beulah Betts, defendant's aunt, testified that he came to her home in Purcell at about 7:00 a. m. Defendant's clothes were wet and he had lumps on his head. She got Haskell Jackson to take him back to Oklahoma City.

Haskell Jackson testified that he took the defendant to Oklahoma City on the morning of September 17th. Defendant had a gash on his head and appeared to be in shock.

■ Defendant generally asserts, in assignments of error one, two and five, that the trial court erred by failing to give his requested instructions and refusing to submit a verdict form covering a lesser included offense of Assault and Battery with a Dangerous Weapon with Intent to Injure, under 21 O.S.1971, § 645. We are of the opinion that these assignments of error are wholly without merit. Defendant's theory of defense was that he did not shoot the victim—not that he shot her only with the intent to injure. In dealing with a similar assertion in *Hicks v. State*, Okl.Cr., 503 P.2d 243 (1972), we stated:

"The second proposition contends that the trial court erred in refusing to give defendant's instructions relating to this theory of the case on simple assault and battery and self-defense. We are of the opinion that the trial court properly declined the defendant's requested instructions. The defendant's theory of defense was not that of self-defense but rather that he did not stab the victim. . . ."

■ Defendant contends, in the third assignment of error, that the trial court erred in permitting Vervia Mae Daniels to testify as to other offenses. We have carefully examined the alleged improper testimony and find that on two instances wherein the witness testified as to possible traffic offenses and that defendant broke into her house, that the trial court found the testimony to be voluntary and unresponsive. The trial court properly sustained defendant's objections and admonished the jury not to consider such testimony for any purpose. The trial court further admonished the witness to be more attentive and to answer the questions very directly. We have consistently held that a trial court's admonition to the jury not to consider the remarks of a witness usually cures an error unless it is of such a nature, after considering the evidence, that the error appears to have determined the verdict. See *Price v. State*, Okl.Cr., 546 P.2d 632 (1976) and *Goodwin v. State*, Okl.Cr., 506 P.2d 571 (1973). We are of the opinion that the witness' voluntary remarks concerning traffic violations and illegal entry were not so prejudicial that their harmful effect was not eliminated by the admonition of the trial court.

■ Defendant next alleges, under this assignment of error, that the trial court erred in allowing testimony concerning a threat made by the defendant to the victim some two months prior to the date of the offense charged. We agree with the trial court's ruling wherein he overruled defendant's objection and stated:

"Ladies and gentlemen of the jury, the marital problems of these persons are not what we are here to try. However, whatever value the relationship may have had in helping the jury to determine the state of mind, one with the other, about this time, I will permit it for that limited purpose only."

In *Holman v. State*, 97 Okl.Cr. 279, 262 P.2d 456 (1953), wherein evidence of three prior altercations between the defendant and the victim, occurring within an eight-month period, were admitted, we stated in the second paragraph of the Syllabus:

"In an assault with intent to kill case, evidence of the relation of the parties, ill treatment, previous assaults and difficulties, where not too remote, are admissible as tending to establish motive, intent, and state of mind of the parties. Such evidence is not to be excluded although it may tend to prove some other offense. But in such case the court should by proper instruction restrict such evidence to the purpose for which it is admitted."

We find this assignment of error to be without merit.

Defendant lastly contends that the prejudicial testimony of the victim relating to other offenses placed his character initially and unlawfully in evidence. Inasmuch as we have previously found the admission of such testimony not to be fundamental error, it necessarily follows that we find this assignment of error to be without merit.

In conclusion, we observe the record is free of any error which would cause reversal or justify modification. The judgment

and sentence appealed from is, accordingly, *AFFIRMED.*

CORNISH and BRETT, JJ., concur.