2007 OK CR 5

## In re ADOPTION OF THE 2007 REVISIONS TO THE OKLAHOMA UNIFORM JURY INSTRUCTIONS.

### No. CCAD–2007–1.

Court of Criminal Appeals of Oklahoma.

March 27, 2007.

## ORDER ADOPTING AMENDMENTS TO OKLAHOMA UNIFORM JURY INSTRUCTIONS–CRIMINAL (SECOND EDITION)

¶ 1 On October 27, 2006, The Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Jury Instructions submitted its report and recommendations to the Court for adoption of amendments to Oklahoma Uniform Jury Instructions–Criminal (Second Edition). The Court has reviewed the report by the committee and recommendations for the adoption of the 2007 proposed revisions to the Uniform Jury Instructions. Pursuant to 12 O.S.1991, § 577.2, the Court accepts that report and finds the revisions should be ordered adopted.

¶ 2 **IT IS THEREFORE ORDERED ADJUDGED AND DECREED** that the report of The Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Jury Instructions shall be accepted, the revisions shall be available for access via the internet from this Court's web site at www.okcca.net on the date of this order and provided to West Publishing Company for publication. The Administrative Office of the Courts is requested to duplicate and provide copies of the revisions to the judges of the District Courts and the District Courts of the State of Oklahoma are directed to implement the utilization of these revisions effective on the date of this order.

¶ 3 **IT IS FURTHER ORDERED ADJUDGED AND DECREED** the amendments to existing OUJI–CR 2d instructions, and the adoption of new instructions, as set out in the following designated instructions and attached to this order, are adopted, to-wit:

1–10; 4–13; 4–16; 4–64; 4–68A; 4–79; 4–87A; 4–95A; 4–124; 4–128; 6–53; 9–46; 10–2

¶ 4 The Court also accepts and authorizes the updated committee comments to be published, together with the above styled revisions and each amended page in the revisions to be noted at the bottom as follows "(1/2007 Supp.)".

¶ 5 **IT IS THE FURTHER ORDER OF THIS COURT** that the members of The Oklahoma Court of Criminal Appeals Committee for Preparation of Uniform Criminal Jury Instructions be commended for their ongoing efforts to provide up-to-date Uniform Jury Instructions to the bench and the bar of the State of Oklahoma.

¶ 6 **IT IS SO ORDERED.**

¶ 7 **WITNESS OUR HANDS AND THE SEAL OF THIS COURT** this 27th day of March, 2007.

/s/ Gary L. Lumpkin
GARY L. LUMPKIN, Presiding Judge

/s/ Charles A. Johnson
CHARLES A. JOHNSON, Vice Presiding Judge

/s/ Charles S. Chapel
CHARLES S. CHAPEL, Judge

/s/ Arlene Johnson
ARLENE JOHNSON, Judge

/s/ David Lewis
DAVID LEWIS, Judge

SUPPLEMENT 1/2007

OUJI–CR 1–10

INTRODUCTORY INSTRUCTIONS— JUROR QUESTIONNAIRES

IN THE DISTRICT COURT OF THE _____ JUDICIAL DISTRICT OF THE STATE OF OKLAHOMA SITTING IN AND FOR _____ COUNTY

THE STATE OF OKLAHOMA,
 Plaintiff,

vs.

JOHN DOE,
 Defendant.

Case No. _____

 

## JUROR QUESTIONNAIRE

Each prospective juror must complete and sign this standard juror questionnaire and any supplemental questionnaire provided by the court. This questionnaire and any supplemental questionnaire shall be confidential and will be used by the judge and the attorneys to aid them in selecting the jury in this case.

If you do not understand a question, please indicate. If you do not have enough room to give adequate explanation to your answer, please use the space in question 27 for additional information. If there is any question that you would rather discuss with the judge and attorneys privately outside the presence of the other jurors, please mark the question with an asterisk (*).

1. Name: _____
 (Last) (First) (Middle Initial)
2. Sex: ( ) Male ( ) Female
3. Marital Status: ( ) Married ( ) Never Married ( ) Separated
 ( ) Divorced ( ) Widowed
4. Date of Birth: _____
5. Place of Birth: _____
6. Length of Residency in Oklahoma (years): _____
7. What County Do You Live In? _____
8. List Other Places (City and State) You Have Lived _____
9. What Is Your Occupation? _____
 (If retired or unemployed, write retired or unemployed and give your previous occupation.)
10. If You Are Currently Employed Outside the Home, Please Provide:
 Name of Employer _____
 Job Title _____
 Length of Time Worked There _____
11. List Other Types of Jobs You Have Held as an Adult _____

12. Educational Background: _____

13. If You Attended College or Vocational School, Specify Your Major Areas of Study and Any Degrees or Certificates You Earned and Whether You Have Taken Any Course in Law: _____

14. If You Have Had Military Experience, State Your Highest Rank, Branch of Service, Length of Service, and Specify Whether Service Was Reserve or Active Duty: ____

15. List the Organizations That You Belong to or Participate In, and the Offices, If Any, That You Hold in These Organizations: _____

16. If You Are Married, State Spouse's Full Name, Occupation and Employer _____

17. If You Have Any Children or Step Children, Please Provide the Following Information:
 Child # 1: Sex _____ Age _____ Occupation _____
 Child # 2: Sex _____ Age _____ Occupation _____
 Child # 3: Sex _____ Age _____ Occupation _____

Child # 4: Sex _____ Age _____ Occupation _____

18. Have You Ever Served as a Juror? ( ) Yes ( ) No
If Yes, Please Provide the Following Information:

| Year | Court/Location | Type of Case | Were You the Foreperson? |
|------|----------------|--------------|--------------------------|
| ____ | _____ | _____ | ( ) Yes ( ) No |
| ____ | _____ | _____ | ( ) Yes ( ) No |
| ____ | _____ | _____ | ( ) Yes ( ) No |

19. Have You Ever Appeared as a Witness in Any Court Proceeding, Either Civil, Criminal or Military? ( ) Yes ( ) No
If Yes, What Were the Circumstances? _____

20. Have You, Any Member of Your Immediate Family, or Any Close Friend Been a Defendant in a Criminal or Military Court Martial Case? ( ) Yes ( ) No
If Yes, Who and Relationship to You _____
Type of Crime Accused of Committing? _____
Was There a Conviction? ( ) Yes ( ) No

21. Have You, Any Member of Your Immediate Family, or Any Close Friend Been the Victim of a Crime? ( ) Yes ( ) No
If Yes, Who Was the Victim? _____
What Was the Crime? _____
When Did it Occur? _____
Was an Arrest Made? ( ) Yes ( ) No

22. Have You, Any Family Member, or Any Close Friend Ever Been an Employee of or Volunteer for Any Federal, State or Local Law Enforcement Agency or Ever Worked in a Jail, Prison or Detention Center? ( ) Yes ( ) No
If Yes, State Each Person's Name and Relationship to You _____
Position Held _____
Agency _____
Dates of Employment _____

23. Have You, Any Family Member, or Any Close Friend Ever Worked for a District Attorney or Other Prosecuting Attorney's Office? ( ) Yes ( ) No
If Yes, State Each Person's Name and Relationship to You _____
Position Held _____
Name of Attorney and Office _____
Dates of Employment _____

24. Have You, Any Family Member, or Any Close Friend Ever Worked for Any Other Attorney or Law Office? ( ) Yes ( ) No
If Yes, State Each Person's Name and Relationship to You _____
Position Held _____
Name of Attorney and Office _____
Dates of Employment _____

25. Are You Presently Taking Medicine or Have Any Hearing or Other Health Issues Which May Affect Your Ability to Serve as a Juror? ( ) Yes ( ) No
If Yes, Please Explain _____
_____

26. Is There Any Reason You Could Not Serve as a Juror? ( ) Yes ( ) No
If Yes, Please Explain _____
_____

27. Use this Space for Any Additional Comments: _____
_____

I affirm that the foregoing is true and correct to the best of my knowledge and belief.

_____ _____
(Date and Place) (Signature)

## Notes on Use

In its discretion, the trial court may direct the use of this juror questionnaire as well as supplemental questionnaires as a supplement to, rather than a substitute for, voir dire. If used, juror questionnaires should be distributed to the members of the jury pool before the commencement of voir dire, and adequate time for the court and attorneys to review the jurors' responses should be allowed before voir dire begins.

Juror questionnaires should be kept confidential, and copies of them should be made available only for use during voir dire to the attorneys for the prosecution and defense, and to the trial court, except as needed for appellate review. Juror questionnaires should not be made a part of the public record. After the jury has been impaneled, the original questionnaires of all impaneled or questioned jurors should be retained pursuant to Okla. Ct. of Crim.App. R. ____ until all appeals have been concluded. All copies of juror questionnaires should be destroyed at the conclusion of the voir dire, and the originals of all questionnaires for jurors who were not questioned during voir dire should be destroyed at the conclusion of the jurors' service, unless the court orders otherwise for good cause shown. See Okla. Ct. of Crim. App. R. ____.

## Committee Comments

In *Cohee v. State,* 1997 OK CR 30, Attachment 1, 942 P.2d 211, 213–14, the Court of Criminal Appeals adopted the following Guideline for use in criminal proceedings:

Guideline 3. Jury Questionnaires; Confidentiality.

The trial court may, upon request of the parties and at its discretion, allow a written juror questionnaire to be sent to members of the jury pool before voir dire commences, and may allow the results of that questionnaire to be used in voir dire. The trial court must examine and approve the questions contained in the questionnaire. The court shall keep all jurors' home and business telephone numbers confidential unless good cause is shown to the court which would require such disclosure.

Since the *Cohee* decision, Oklahoma trial courts have used juror questionnaires in a number of criminal cases, and this juror questionnaire form is provided to offer further guidance in the use of juror questionnaires. A number of benefits from the use of juror questionnaires have been identified. Juror questionnaires may shorten the time required for voir dire; however, this benefit will not be realized unless counsel refrain from rehashing the information from the questionnaires during voir dire. Another benefit is that juror questionnaires may enable the court and counsel to weed out jurors who could not serve in a case before voir dire begins, and thereby accelerate the process of sending these prospective jurors to a different case. Juror questionnaires may also highlight particular areas (such as prior employment with law enforcement) for more focused inquiry during voir dire. The use of juror questionnaires provides jurors more time to think about their answers and provide more complete responses than voir dire. In addition, since jurors cannot hear the responses of other jurors when they are filling out questionnaires on their own, juror questionnaires can elicit the jurors' own opinions without the influence of the responses by other jurors. Jurors may also be more likely to reveal socially unacceptable attitudes, such as racial prejudice or sexism, in juror questionnaires. Similarly, jurors may be more apt to disclose private or embarrassing information (such as a prior criminal record) in a juror questionnaire than in open court. See Gregory P. Joseph, *American Bar Association Principles for Juries & Jury Trials,* SL044 ALI–ABA 653, 730 (2005); Lin S. Lilley, *Let Jurors Speak the Truth, In Writing,* 41 Trial 64 (July.2005); Valerie Hans & Alyana Jehle, *Avoid Bald Men and People with Green Socks? Other Ways to Improve the Voir Dire Process,* 78 Chi–Kent L.Rev. 1179, 1198 (2003).

The American Bar Association has endorsed the use of juror questionnaires. In February, 2005, the ABA House of Delegates approved 19 Principles for Juries and Jury Trials. Principle 11 states: "Courts should

ensure that the process used to empanel jurors effectively serves the goal of assembling a fair and impartial jury." Paragraph A under Principle 11 provides:

Before voir dire begins, the court and parties, through the use of appropriate questionnaires, should be provided with data pertinent to the eligibility of jurors and to matters ordinarily raised in voir dire, including such background information as is provided by prospective jurors in their responses to the questions appended to the notification and summons considered in Standard 10 D. 1.

1. In appropriate cases, the court should consider using a specialized questionnaire addressing particular issues that may arise. The court should permit the parties to submit a proposed juror questionnaire. The parties should be required to confer on the form and content of the questionnaire. If the parties cannot agree, each party should be afforded the opportunity to submit a proposed questionnaire and to comment upon any proposal submitted by another party.

2. Jurors should be advised of the purpose of any questionnaire, how it will be used and who will have access to the information.

3. All completed questionnaires should be provided to the parties in sufficient time before the start of voir dire to enable the parties to adequately review them before the start of that examination.

American Bar Association, Principles for Juries and Jury Trials 13 (2005). In addition, New Mexico, New York, and Pennsylvania have adopted uniform juror questionnaires for criminal cases. N.M.R.A.Crim. UJI 14–110; N.Y. Ct. R., App. E; Pa. St. R.Crim. P. 632(A)(1) ("Each prospective juror shall complete and verify the standard, confidential juror information questionnaire required by paragraph (H) of this rule, and any supplemental questionnaire provided by the court.").

While juror questionnaires may provide a number of benefits to the jury selection process, there have been concerns raised about juror privacy. Mary R. Rose, *Juror's Views of Voir Dire Questions,* 85 Judicature 10 (2001); Paula L. Hannaford, Safeguarding Juror Privacy: A New Framework for Court Policies and Procedures, 85 Judicature 18 (2001). Juror questionnaires pose a different threat to juror privacy than voir dire in open court, because juror questionnaires are written records. A concern for juror privacy is reflected in the ABA's Principles for Juries and Jury Trials in Principle 7, which states: "Courts should protect juror privacy insofar as consistent with the requirements of justice and the public interest." Both New York and Pennsylvania address concerns for juror privacy by providing for destruction of juror questionnaires at the conclusion of the case. N.Y. Ct. R., App. E, ¶ A(1) ("Upon completion of jury selection, or upon removal of a prospective juror, the questionnaires shall be either returned to the respective jurors or collected and discarded by court staff in a manner that ensures juror privacy."); Pa. St. R.Crim. P. 632(F), (G). Similarly, the Oklahoma Court of Criminal Appeals has provided for destruction of juror certain questionnaires upon completion of the juror's service. Okla. Ct.Crim.App. R. ____.

## OUJI–CR 4–13
## ASSAULT, BATTERY, OR ASSAULT AND BATTERY WITH A DANGEROUS WEAPON BY USE OF A FIREARM— ELEMENTS

No person may be convicted of **assault/battery/(assault and battery)** with a dangerous weapon by use of a firearm unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

*First,* **(an assault)/(a battery)/(an assault and battery)**;

*Second,* upon another person;

*Third,* by shooting at another **(with a firearm)/(with an air gun)/(conductive energy weapon)/(by any means)**;

*Fourth,* without justifiable or excusable cause;

*Fifth,* with intent to injure any person.

Statutory Authority: 21 O.S. ~~1991~~ Supp.2006, § 645.

## Committee Comments

Section 645 of Title 21 forbids conduct which is among the lesser included offenses of section 652. *Daniels v. State*, 1978 OK CR 8, 574 P.2d 1050 ~~(Okl.Cr.1978)~~; *Pettigrew v. State*, 1967 OK CR 124, 430 P.2d 808 ~~(Okl.Cr.1967)~~; *Tharpe v. State*, 1961 OK CR 27, 358 P.2d 232 ~~(Okl.Cr.1961)~~. The principal distinguishing factor between the two statutes is the mental state of the defendant. Section 652 requires proof that the defendant specifically intended death as a result of his assault and battery, whereas section 645 requires proof that the defendant contemplated bodily harm or injury to his victim, but not necessarily death. *Meggett v. State*, 1979 OK CR 89, 599 P.2d 1110 ~~(Okl.Cr.1979)~~; *Davis v. State*, 1960 OK CR 6, 354 P.2d 466 ~~(Okl.Cr. 1960)~~.

An assault or battery with a gun or other dangerous weapon is culpable where it is perpetrated without legal justification or excuse. *Lane v. State*, 1938 OK CR, 65 Okl. Cr. 192, 84 P.2d 807 ~~(1938)~~; *cf. Terhune v. State*, 1974 OK CR 233, 530 P.2d 557 ~~(Okl.Cr. 1974)~~ (simple assault cannot be repelled with a deadly weapon where the assault is not such as to excite the assaulted person's fears, as a reasonable person, of death or great bodily harm).

Since section 645 requires that the offensive conduct be perpetrated either with a type of firearm or air gun or "other means whatever," or by means of a dangerous weapon, a definition of "other means" and "dangerous weapon" is appropriate. The Court of Criminal Appeals has invoked the rule of ejusdem generis in construing section 645, ruling that "other means whatever" refers only to weapons similar to or in the class of firearms and air guns. *Smith v. State*, 1944 OK CR, 79 Okl. Cr. 1, 151 P.2d 74 ~~(1944)~~.

In reference to those implements which might be termed "dangerous" for purposes of section 645, clearly those deemed "deadly" as a matter of law when used in the ordinary manner contemplated by their design and construction, must also be considered "dangerous" for purposes of section 645. *Beeler v. State*, 1959 OK CR 9, ¶ 16, 334 P.2d 799, 806 ~~(Okl.Cr.1959)~~, citing former 21 O.S. 1951 ~~Supp.1995~~, § ~~1272~~ 1271 (repealed 1971). As discussed in the Commission Comment pertinent to section 652, such per se dangerous weapons include "any pistol, revolver, dagger, bowie knife, dirk knife, switch-blade knife, spring-type knife, sword cane, knife having a blade which opens automatically, ... black-jack, loaded cane, billy, hand chain, metal knuckles...." Former 21 O.S. 1951 ~~Supp.1995~~, § ~~1272~~ 1271 (repealed 1971).

If the device used by the defendant in the assault or battery is not dangerous per se, reference must be made to the manner of its use in the circumstances of the case, so that the jury can determine, as a factual matter, whether an ordinary implement took on the character of dangerousness by the way in which the defendant wielded it. *Bourbonnais v. State*, 1912 OK CR 294, 7 Okl. Cr. 717, 122 P. 1131 ~~(1912)~~. The court has consistently stressed:

> The use of a dangerous weapon is what distinguishes the crime of an assault with a dangerous weapon with intent to do bodily harm from a simple assault. A dangerous weapon is one likely to produce death or great bodily injury by the use made of it, or perhaps it is more accurately described as a weapon which in the manner it is used or attempted to be used endangers life or inflicts great bodily harm.

*Wilcox v. State*, 1917 OK CR 137, 13 Okl. Cr. 599, 601, 166 P. 74, 75 ~~(1917)~~. *See also Smith, supra*, at 82–85. When appropriate proof of the use made by the defendant of the particular item in committing the offensive conduct is adduced, the court has found a variety of items sufficiently "dangerous" to warrant conviction under section 645. *See, e.g., Barnes v. State*, 1971 OK CR 445, 490 P.2d 783 ~~(Okl.Cr.1971)~~ (beer glass); *Hay v. State*, 1968 OK CR 209, 447 P.2d 447 ~~(Okl.Cr. 1968)~~ (feet clad with shoes); *Bald Eagle v. State*, 1960 OK CR 73, 355 P.2d 1015 ~~(Okl.Cr. 1960)~~ (beer bottle); *Strahan v. State*, 1955 OK CR 71, 284 P.2d 744 ~~(Okl.Cr.1955)~~ (automobile window crank); *Lott v. State*, 1950

OK CR, 92 Okl. Cr. 324, 223 P.2d 147 (1950) (automobile); *Tipler v. State,* 1943 OK CR, 78 Okl. Cr. 85, 143 P.2d 829 (1943) (leather strap); *Beck v. State,* 1941 OK CR, 73 Okl. Cr. 229, 119 P.2d 865 (1941) (chair, stick, clock).

Although the instruction describes the implement used to perpetrate the crime in the categorical terms of the statute, where the proof adduced shows that the assaultive means is known, the court should substitute the particular weapon involved for the broad categorical terms.

The mere fact that the defendant used a particular device in a manner likely to produce injury or great bodily harm does not alleviate the necessity of proving that the defendant specifically intended to inflict such corporal harm. For example, in *Eckhart v. State,* 1956 OK CR 6, 292 P.2d 451 (Okl.Cr. 1956), the defendant fired a shot at some laborers working on the roof of the building in which the defendant lived. The events leading up to the altercation included the facts that the workmen had disconnected the defendant's air conditioning on the previous day, and that they had begun working on the room at 5:30 a.m. on the day of the shooting. The defendant was awakened when chunks of plaster were dislodged from his ceiling and struck him as he lay in bed. One of the workmen stood only a few feet from the defendant as the defendant fired the shot. The court reduced the defendant's conviction for assault with a dangerous weapon to simple assault, on the ground that the defendant's intent to injure someone was not established by these circumstances. At most, the court believed that the defendant was provoked by the incidents of the past day and fired a shot in order to scare the workmen and to demonstrate his grievance.

Intent is negated by the occurrence of an accident, so long as the accident producing the injury occurred while the defendant was acting in a lawful manner, with reasonable regard for the safety of others. *Lane v. State, supra.* Thus, if the defendant armed himself for purposes of assaulting the victim, rather than to ward off an attack, the fact that the gun discharged accidentally furnishes no defense. *Lane, supra.*

The existence of specific intent to harm or injure is a question of fact for the jury. *Hart v. State,* 1971 OK CR 258, 488 P.2d 158 (Okl.Cr.1971); *Washington v. State,* 1967 OK CR 59, 426 P.2d 372 (Okl.Cr.1967).

The instruction is set forth in alternative formulations in the interests of clarity. Where the injury is inflicted by means of a dangerous weapon, the defendant will generally be aware of the identity of the victim, so that the intent is to wound that particular person. However, where the defendant shoots with intent to injure one person, the fact that an unintended victim is assaulted does not alleviate the offense. *Jones v. State,* 1973 OK CR 151, 508 P.2d 280 (Okl.Cr. 1973).

A comment regarding proof of specific intent to harm under section 645 is warranted. The Court of Criminal Appeals has held on many occasions that the particular use to which an automobile is put by the defendant may render it a dangerous weapon. *Hart, supra; Washington, supra; State v. Hollis,* 1954 OK CR 98, 273 P.2d 459 (Okl.Cr.1954). However, the court has further ruled that the defendant's culpable or wanton negligence in the operation of his automobile suffices to substitute for and to supply the requisite intent to do bodily harm under section 645. *Matin v. State,* 1958 OK CR 113, 333 P.2d 585 (Okl.Cr.1958); *Lott v. State, supra; Beck v. State, supra.* These cases involved gross intoxication on the part of the defendants.

However, in view of the enactment of the negligent homicide statute in 1961, section 11–903 of Title 47, and the court's interpretation of this statute in subsequent cases, a question regarding the scope of the rule articulated in the aforementioned cases is raised. Section 11–903 provides that a person who causes the death of another through operation of a vehicle in "reckless disregard for the safety of others" is culpable for negligent homicide. The court has held that all forms of behavior of the reckless driving ilk which cause death are exclusively covered by this statute. *Short v. State,* 1977 OK CR 44, 560 P.2d 219 (Okl.Cr.1977). However, where the defendant is guilty of driving while intoxicated and such conduct produces death, this conduct removes a consequent homicide from

the definition of "negligent homicide," and renders a conviction for manslaughter in the first degree appropriate. *Lomahaitewa v. State*, 1978 OK CR 67, 581 P.2d 43 (Okl.Cr. 1978); *White v. State*, 1971 OK CR 141, 483 P.2d 751 (Okl.Cr.1971); *Ritchie v. Raines*, 1962 OK CR 101, 374 P.2d 772 (Okl.Cr.1962).

Although the court's construction of the intent to do bodily injury element of section 645 where the defendant is intoxicated and causes injury through his vehicle is consistent with the court's interpretation of the vehicular homicide statute, it is submitted that the substitution of specific intent to harm by culpable negligence is limited to cases involving intoxication. Otherwise, a more severe punishment for reckless driving that produces injury would be possible than for reckless driving that causes death.

## OUJI–CR 4–16
### ASSAULT OR BATTERY UPON POLICE OR OTHER STATE PEACE OFFICER—ELEMENTS

No person may be convicted of **assault/battery/(assault and battery)** upon a **(police officer)/sheriff/(deputy sheriff)/(highway patrolman)/(corrections personnel)/(State peace officer)** unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

First, **(an assault)/(a battery)/(an assault and battery)**;

Second, upon a **(police officer)/sheriff/(deputy sheriff)/(highway patrolman)/(corrections personnel)/(State peace officer)**;

Third, known by the defendant(s) to be a **(police officer)/sheriff/(deputy sheriff)/(highway patrolman)/(corrections personnel)/(State peace officer)**;

Fourth, without justifiable or excusable cause;

Fifth, committed while the **(police officer)/sheriff/(deputy sheriff)/(highway patrolman)/(corrections personnel)/(State peace officer)** was in the performance of his/her duties as a **(police officer)/sheriff/(deputy sheriff)/(highway patrolman)/(corrections personnel)/(State peace officer)**.

Statutory Authority: 21 O.S.2000 & Supp. 2005 2006, §§ 648, 649.

### Notes on Use

The court should use the definitions of assault and/or battery in OUJI–CR 4–2 and 4–3 with this instruction. For a statutory definition of police officer, see 21 O.S. Supp. 2005 2006, § 648. For a statutory definition of corrections personnel, see 21 O.S. 2001, § 649(C).

### Committee Comments

Section 649 of Title 21 singles out a particular type of simple assault or battery for enhanced punishment: wrongful attack upon a police officer or other officer in the performance of his/her duties. Such an attack is wrongful unless it occurs during the course of reasonable resistance by the defendant to an unlawful arrest. *Sandersfield v. State*, 1977 OK CR 242, 568 P.2d 313; *Cantrell v. State*, 1977 OK CR 100, 561 P.2d 973; *Morrison v. State*, 1974 OK CR 223, 529 P.2d 518; *Davis v. State*, 1932 OK CR, 53 Okl. Cr. 411, 12 P.2d 555. Section 648 defines which officers are protected by section 649.

The court's construction of the phrase "while in the performance of his duties" may be perceived by contrasting two recent cases. In *Stewart v. State*, 1974 OK CR 173, 527 P.2d 22, the complainant was an off-duty Norman police officer employed as a security guard at an apartment complex. At the time the altercation occurred, the officer was at his place of private employment, without a gun or a uniform. The court reversed the defendant's conviction under section 649, and held:

We believe that when an off-duty police officer accepts private employment and is receiving compensation from his private employer he changes hats from a police officer to a private citizen when engaged in this employment and he is therefore representing his private employer's interest and not the public's interest. . . .

We therefore hold that as a matter of law when an off-duty police officer accepts private employment ... he becomes a private citizen. Therefore, to make a valid arrest he must comply with the law applicable to a citizen's arrest.

*Id.* at ¶ ¶ 7, 8, 527 P.2d at 24.

This holding was distinguished by the court in *Brooks v. State,* 1977 OK CR 96, 561 P.2d 137. The complaining officer in *Brooks* was not in uniform and was off-duty at the time he became involved in a fracas with the defendants, when he attempted to investigate rowdy conduct on the part of the defendants. In holding *Stewart* inapplicable because the officer in that case was performing his own private, rather than public, functions the court held:

[A]ny time a police officer, whether in uniform or not, takes it upon himself to enforce the law in order to maintain peace and order for the general benefit of the public, he is acting in the performance of his duties as a police officer.

. . .

Officer Christian, although off duty, was not acting under the employ of a private enterprise but was acting for the benefit of the public in general with the aim of maintaining peace and order.

*Id.* at 140.

Section 650 of Title 21 denominates as a felony any unlawful aggravated assault and battery perpetrated upon a police officer or other officer in the performance of duties. The Commission has incorporated only the aggravated assault and battery element of infliction of great bodily injury in the instruction, since officers on active duty are unlikely to be aged or decrepit. See 21 O.S.2001, § 646.

The third element in this instruction is included because 21 O.S.2001, § 650 649 requires the aggravated assault and battery

upon the peace officer to have been committed knowingly.

## OUJI–CR 4–64
## MURDER IN THE FIRST DEGREE BY FELONY MURDER—ELEMENTS

No person may be convicted of murder in the first degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

*First,* the death of a human;

*Second,* the death occurred as a result of an act or event which happened in the defendant's **commission/(attempted commission)** of **a/an**

[forcible rape]

[robbery with a dangerous weapon]

[kidnapping]

[escape from lawful custody] [1]

[*eluding an officer*]

[first-degree **burglary/arson**]

[murder of a person other than the deceased]

[**shooting/discharge** of a **firearm/crossbow** with intent to kill a person other than the deceased]

[intentional discharge of a **firearm/[specify other deadly weapon]** into a **dwelling/(building used for business/public purposes)**]

[unlawful distributing or dispensing of controlled dangerous substances]

[trafficking in illegal drugs];

*Third,* the elements of the *crime of*

[forcible rape]

[robbery with a dangerous weapon]

[kidnapping]

[escape from lawful custody]

[*eluding an officer*]

[first-degree **burglary/arson**]

1. It must be emphasized that the Oklahoma statutes do not include as a specific crime "An Escape from Lawful Custody." This instruction is appropriate only when the defendant has escaped from a peace officer after being lawfully arrested or detained by such officer, 21 O.S. 2001, § 444, or where the escape is from a penal institution, 21 O.S.2001, § 443. (See OUJI–CR 6–52 through 6–54.)

[murder of a person other than the deceased]

[shooting/discharge of a firearm/crossbow with intent to kill a person other than the deceased]

[intentional discharge of a **firearm/[specify other deadly weapon]** into a **dwelling/(building used for business/public purposes)]**

[unlawful distributing or dispensing of controlled dangerous substances]

[trafficking in illegal drugs];

that the defendant is alleged to have been in the commission of are as follows:

**[Give Elements of Underlying Felony].**

### Notes on Use

The trial judge should give accomplice and/or coconspirator instructions where appropriate.

### Committee Comments

As a result of its amendment in 1996, the felony-murder statute, 21 O.S. ~~2001~~ Supp. 2006, § 701.7(B) now covers deaths committed by intended victims, police officers and innocent bystanders. *Kinchion v. State,* 2003 OK CR 28, ¶ 6, 81 P.3d 681, 683.

### OUJI–CR 4–68A
### DEATH PENALTY—MENTAL RETARDATION

You must first determine if the Defendant is mentally retarded as it is defined below. This must be done before deciding what sentence to impose. A Defendant who is mentally retarded cannot be sentenced to death. It is the Defendant's burden to prove by a preponderance of the evidence that **he/she** is mentally retarded. Preponderance of the evidence means more probable than not.

A person is mentally retarded if ~~he or she functions at a significantly sub-average intellectual level that substantially limits his or her ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to under~~stand the reactions of others. Intelligence quotients are one of the many factors that may be considered, but are not alone determinative. **he/she** has significantly subaverage general intellectual functioning along with significant limitations in adaptive functioning.

"Significantly subaverage general intellectual functioning" means an intelligence quotient of seventy (70) or below. An intelligence quotient of seventy (70) or below on an individually administered, scientifically recognized standardized intelligence quotient test administered by a licensed psychiatrist or psychologist is evidence of significantly subaverage general intellectual functioning. In determining the intelligence quotient, the standard measurement of error for the test administrated shall be taken into account.

"Significant limitations in adaptive functioning" means significant limitations in two or more of the following adaptive skill areas; communication, self-care, home living, social skills, community use, self-direction, health, safety, functional academics, leisure skills and work skills.

The onset of the defendant's mental retardation must have been noticeable before the age of eighteen (18) years; however, the intelligence quotient test does not have to have been administered before the age of eighteen (18) years.

In reaching your decision, you must determine:

(1) ~~Is the Defendant a person who is mentally retarded as defined in this instruction~~ Does the Defendant have an intelligence quotient of seventy (70) or below?

(2) ~~Was the mental retardation present and known before the Defendant was eighteen (18) years of age?~~ (3) Does the Defendant have significant limitations in adaptive functions in at least two of the following skill areas: communication; self-care; ~~social/interpersonal skills;~~ home living; social skills; community use; self-direction; ~~academics;~~ health and safety; functional academics; ~~use of community resources~~ leisure skills; and work skills?

(3) Is there evidence that the Defendant's onset of the mental retardation was noticea-

ble before the Defendant was eighteen (18) years of age?

If you <u>unanimously</u> find by a preponderance of the evidence that the answer to each of these questions is yes, then you must find that the Defendant is mentally retarded and so indicate on your verdict form. You must then decide whether the Defendant shall be sentenced to life imprisonment or life imprisonment without the possibility of parole and so indicate on your verdict form.

If you <u>unanimously</u> find that the answer to any of these questions is no, then you must find that the Defendant is not mentally retarded and so indicate on your verdict form. <u>If you either unanimously find that the Defendant is not mentally retarded or you are unable to reach a unanimous decision, you</u> ~~You~~ must then consider the remainder of the instructions relating to the death penalty and decide whether the defendant shall be sentenced to life imprisonment, life imprisonment without the possibility of parole, or death.

---

Statutory Authority: 21 O.S. Supp.2006, § 701.10b.

### Notes on Use

This instruction should be used if the defendant has raised mental retardation as a bar to a death sentence in accordance with ¶ D of 21 O.S. Supp.2006, § 701.10b and has requested submission of the issue of mental retardation to the jury during the sentencing phase. The verdict form in OUJI–CR 4–87A should be used with this instruction.

If the jury either determines that the defendant is not mentally retarded or is unable to reach a unanimous decision on mental retardation, the judge should instruct the jury that it may consider evidence of mental retardation as a mitigating factor. *See* 21 O.S. Supp., § 701.10b(G); OUJI–CR 4–79, *infra.*

### ~~Committee Comments~~

~~This instruction is based on the instruction in *Murphy v. State,* 2002 OK CR 32, Appendix A, 54 P.3d 556. It is modified to facilitate~~ ~~juror comprehension and to emphasize that the defendant has the burden of proof on the issue of mental retardation and that this issue must be decided before the jury may consider imposing a sentence of death.~~

### OUJI–CR 4–79
### DEATH PENALTY PROCEEDINGS—
### CIRCUMSTANCES WHICH MAY
### BE MITIGATING

Evidence has been introduced as to the following mitigating circumstances:

[the defendant did not have any significant history of prior criminal activity]

[the defendant acted under duress or under the domination of another person]

[the defendant's capacity to appreciate the criminality of his/her conduct or to conform his/her conduct to the requirements of law was impaired]

[the defendant was under the influence of mental/emotional disturbance]

[the victim was a willing participant in the defendant's conduct]

[the defendant acted under circumstances which tended to justify, excuse or reduce the crime]

[the defendant is likely to be rehabilitated]

[cooperation by the defendant with authorities]

[the defendant's age]

[the defendant's character]

[the defendant's emotional/family history]

<u>[evidence of mental retardation ]</u>

In addition, you may decide that other mitigating circumstances exist, and if so, you should consider those circumstances as well.

### Notes on Use

The trial court should select the mitigating circumstances listed above that are supported by some evidence. The list of possible mitigating circumstances that the jury may consider is taken from N.M. Stat. Ann. § 31–20A–6. This list is intended to be illustrative, rather than exclusive, and the trial court should instruct the jury on any other

mitigating circumstances for which evidence has been introduced.

### OUJI–CR 4–87A

### DEATH PENALTY—MENTAL RETARDATION VERDICT FORM IN THE DISTRICT COURT OF THE ____ JUDICIAL DISTRICT OF THE STATE OF OKLAHOMA SITTING IN AND FOR ____ COUNTY

THE STATE OF OKLAHOMA,
 Plaintiff,

vs

JOHN DOE,
 Defendant.

Case No. ____

### VERDICT ON SPECIAL ISSUE OF MENTAL RETARDATION

We, the jury, empaneled and sworn in the above-entitled cause, do, upon our oaths, find as follows:

~~Defendant is:~~

____ ~~Mentally~~ We unanimously find by a preponderance of the evidence that the Defendant is mentally retarded, as defined by the Court's instructions, ~~and fix his/her punishment at~~ _____.

____ ~~Not~~ We unanimously find that the Defendant is not mentally retarded, as defined by the Court's instructions, ~~and fix his/her punishment at~~ _____.

____ We are unable to unanimously find by a preponderance of the evidence that the Defendant is mentally retarded, as defined by the Court's instructions.

_____
FOREPERSON

Statutory Authority: 21 O.S. Supp.2006, § 701.10b.

### Notes on Use

This Verdict form should be used with OUJI–CR 4–68A.

### Committee Comments

See ~~Murphy v. State, 2002 OK CR 32, Appendix A, 54 P.3d 556.~~

### OUJI–CR 4–95A

### MURDER IN THE FIRST DEGREE— DEFENSE OF HEAT OF PASSION

A person who kills another person in the heat of passion cannot have the deliberate intent required for murder in the first degree. Thus, malice aforethought and heat of passion cannot co-exist.

### Notes on Use

This instruction should be given if the defendant has raised heat of passion manslaughter as a defense to murder in the first degree and evidence supporting this defense has been introduced at trial. In cases where heat of passion manslaughter has been charged as a lesser included offense to murder in the first degree, the trial court should also give OUJI–CR 10–23 and 10–24 relating to lesser included offenses and the appropriate jury instructions on murder in the first degree in OUJI–CR 4–61 through 4–63 and heat of passion manslaughter in OUJI–CR 4–95 and 4–97 through 4–101. This instruction should be given after the heat of passion manslaughter instructions.

### Committee Comments

The Oklahoma Court of Criminal Appeals noted in *Hogan v. State*, 2006 OK CR 19, ¶ 45, n. 14, 139 P.3d 907, 925 n. 14, and *Black v. State*, 2001 OK CR 5, 21 P.3d 1047, 1067 n. 17, that more specific jury instructions on the relationship between murder in the first degree and heat of passion manslaughter may be desirable. See also *United States v. Lofton*, 776 F.2d 918, 921–22 (10th Cir.1985) (reversing murder conviction because the jury instructions did not specifically distinguish heat of passion and malice "as inconsistent mental states or inform the jury that finding one necessarily precluded finding the other").

## OUJI–CR 4–124
### RAPE IN THE SECOND DEGREE— ELEMENTS

No person may be convicted of rape in the second degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

*First,* sexual intercourse;

*Second,* with a person who is not the spouse of the defendant [and who may be of the same sex as the defendant];

[*Third,* where the victim was under the age of sixteen].

**OR**

[*Third,* where the victim was intoxicated by a/an narcotic/(anesthetic agent);

*Fourth,* given **by/(in the presence of)** the defendant];

*Fifth,* as a means of forcing the victim to submit].

**OR**

[*Third,* where the victim was at the time unconscious of the nature of the act and this was known by the defendant].

**OR**

[*Third,* where the victim was under the belief induced by the defendant that the victim was having intercourse with **his/her** spouse].

**OR**

[Third, where the victim was under the legal **custody/supervision;**

*Fourth,* of a (**state/federal agency)/county/municipality/(political subdivision**); and

*Fifth,* the defendant was an **employee/(employee of a contractor of)/ the (state/federal agency)/county/municipality/(political subdivision)** that exercised authority over the victim;

**OR**

[*Third,* where the victim was between sixteen and ~~eighteen~~ twenty years of age;

*Fourth,* the victim was a **student/(under the legal custody/ supervision) of a/an (elementary/secondary school)/(junior high)/high/(public vocational)** school;

*Fifth,* the defendant was eighteen years of age or older; and

*Sixth,* the defendant was an employee of the victim's school system].

---

Statutory Authority: 21 O.S. ~~2001~~ Supp.2006, § 1111, 21 O.S.2001, § 1114.

### Notes on Use

The trial court should read the bracketed language in the second element only if the defendant was of the same sex as the victim. In the third element the trial court should read only the alternative (or alternatives) that is (or are) supported by the evidence.

### Committee Comments

In all instances, the statutory age under which a victim is legally incapable of consenting to sexual intercourse is 16, section 1111(A)(1). If a defense under section 1112 is unavailable, sexual intercourse with a person under 16 years of age is at least rape in the second degree, although if the victim is under 14 years of age, rape in the first degree is a possible charge. Even if the proof establishes that the victim is 13 years of age, a prosecution and conviction for rape in the second degree is proper because rape in the second degree is a lesser included offense of rape in the first degree. Hence, the first alternative in the third element simply indicates a victim under 16 years of age.

The other alternatives in the third element constitute, in fact or by law, sexual intercourse without the consent of the victim.

The age of the defendant is not an element of the crime of second-degree rape. If the prosecutor is uncertain whether it can be proved that the defendant has attained the age of 18, he/she can charge the defendant with second-degree rape and the conviction would be upheld although it is established

that the defendant is over 18. *Brasel v. State,* 48 Okl. Cr. 403, 291 P. 807 (1930). The age of the defendant may become relevant as a defense, however, under section 1112, if the victim is over 14 years of age and consents, and the defendant is under 18 years of age.

Oklahoma's rape shield law, 12 O.S.2001, § 2412, limits the use of evidence of the sexual behavior of the victim in prosecutions for sexual offenses.

## OUJI–CR 4–128

### FORCIBLE ORAL SODOMY— ELEMENTS

No person may be convicted of forcible oral sodomy unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

*First,* penetration;

*Second,* of the **mouth/vagina** of the defendant/victim;

*Third,* by the **mouth/penis** of the defendant/victim;

[*Fourth,* by **(threats of) force/violence** accompanied by the apparent power of execution.]

### OR

[*Fourth,* by a person over the age of eighteen on a child under the age of sixteen.]

### OR

[*Fourth,* committed upon a person incapable through mental illness or any unsoundness of mind of giving legal consent].

### OR

[*Fourth,* committed by a **state/county/municipal/(political subdivision) employee/contractor/[employee of a contractor of (the state)/(a county/municipality/(political subdivision of Oklahoma) ]** upon a person who was under the legal custody, supervision or authority of a **(state agency)/county/municipality/(political subdivision)** of Oklahoma.

### OR

Fourth, where the victim was between sixteen and twenty years of age;

Fifth, the victim was a student of a **secondary school)/(junior high)/high/(public vocational)** school;

Sixth, the defendant was eighteen years of age or older; and

Seventh, the defendant was an employee of the victim's school system].

You are further instructed that any sexual penetration, however slight, is sufficient to complete the crime.

Statutory Authority: 21 O.S. Supp. ~~2000~~ 2006, §§ 886, 888; 21 O.S. ~~1991~~ 2001, § 887.

### Notes on Use

This instruction is intended for use in forcible oral sodomy cases under 21 O.S. Supp. ~~2000~~ 2006, § 888. It does not cover forcible anal sodomy, which constitutes the crime of rape and is covered by OUJI–CR 4–119 through 4–127.

The trial court should select the Fourth Element that is supported by the evidence. The Fourth Element should not be included for prosecutions under 21 O.S. Supp. ~~2000~~ 2006, § 886.

### Committee Comments

Oklahoma has two sodomy statutes, 21 O.S. Supp. ~~2000~~ 2006, §§ 886, 888. Force is not an element of sodomy under 21 O.S. Supp. ~~2000~~ 2006, § 886. *Hinkle v. State,* 1989 OK CR 4, ¶¶ 4–5, 771 P.2d 232, 233. Proof of force is required under 21 O.S. Supp. ~~2000~~ 2006, § 888, however, unless the victim was under 16 years of age or mentally ill or the sodomy was committed by a state employee or contractor upon a person in the custody of a political subdivision of the State.

Section 886 has been held not to be unconstitutionally vague. *Golden v. State,* 1985 OK CR 9, ¶ 4, 695 P.2d 6, 7. However, in *Post v. State,* 1986 OK CR 30, ¶¶ 11–12, 715 P.2d 1105, 1109–10, the Oklahoma Court of Criminal Appeals declared it unconstitutional as violative of the right to privacy if applied to private consensual heterosexual activity. Ac-

cordingly, the jury should receive an instruction on the defense of consent in such cases if there is evidence of consent presented. *Hinkle v. State*, 1989 OK CR 4, ¶¶ 4–5, 771 P.2d 232, 233. In *Garcia v. State*, 1995 OK CR 58, ¶ 4, 904 P.2d 144, 145, the Court of Criminal Appeals ruled that it was error for the trial court to give an instruction for nonforcible sodomy (21 O.S. Supp. ~~2000~~ 2006, § 886) as a lesser included offense of forcible sodomy (21 O.S. Supp. ~~2000~~ 2006, § 888), where the charge involved heterosexual activity and the defendant raised the defense of consent.

Penetration is required under 21 O.S. ~~1991~~ 2001, § 887. *Salyers v. State*, 1988 OK CR 88, ¶ 7, 755 P.2d 97, 100. Corroboration of the victim's testimony is not required unless "the victim's testimony is so incredible or has been so thoroughly impeached that a reviewing court must say that the testimony is clearly unworthy of belief." *Salyer v. State*, 1988 OK CR 184, ¶ 22, 761 P.2d 890, 895.

OUJI–CR 6–53

ESCAPE FROM PENAL
INSTITUTION—
ELEMENTS

No person may be convicted of escape from a penal institution unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

*First*, escape from a **(juvenile detention facility)/(county/ city jail)**;

*Second*, by a **(prisoner in a county/city jail)/(person detained in a juvenile detention facility)**;

*Third*, **(awaiting charges for a felony offense)/(awaiting trial)/(having been sentenced on a felony charge to the Department of Corrections)/(having been lawfully detained)**;

*Fourth*, while he/she is **(actually confined there)/(permitted to be at large as a trusty)/(awaiting transportation to a Department of Corrections facility to serve his/her sentence)**.

**OR**

*First*, escape from the custody of the Department of Corrections;

*Second*, by an inmate in its custody;

*Third*, while **(actually confined in a correctional facility)/(assigned to a house arrest program)/(assigned to the Preparole Conditional Supervision Program)/(assigned to an alternative incarceration authorized by law)/(permitted to be at large as a trusty)**.

[An inmate assigned to **(house arrest)/(the Preparole Conditional Supervision Program)/(an alternative incarceration authorized by law)** shall be considered to have escaped if **(the inmate cannot be located within a 24 hour period)/(the inmate fails to report to a confining facility/institution as directed)**.]

[Custody means either imprisonment by physical means or restraint by a superior force acting as a moral restraint.]

[Escape means a departure from custody, with or without force, whether from the custody of an officer or from any place where one is lawfully confined.]

___

Statutory Authority: 21 O.S. Supp. ~~1995~~ 2006, § 443.

Committee Comments

~~In *McBrain v. State*, 1988 OK CR 261, ¶¶ 10–11, 764 P.2d 905, 908 (Okl.Cr.1988), the Oklahoma Court of Criminal Appeals construed section 443(A) to apply to an escape from a penal institution while a prisoner was awaiting trial for a misdemeanor.~~

The first bracketed paragraph is taken from 21 O.S. Supp. ~~1995~~ 2006, § 443(C). The definitions in the last two paragraphs are based on *Urbauer v. State*, 1987 OK CR 231, ¶ 5, 744 P.2d 1274, 1275 ~~(Okl.Cr.1987)~~. See also *Hunt v. State*, 1990 OK CR 37, ¶¶ 6–9, 793 P.2d 1366, 1368 ~~(Okl.Cr.1990)~~ (affirming conviction of prisoner who escaped while he was at liberty on a weekend pass).

## OUJI–CR 9–46
### REENACTMENT EVIDENCE

The **State/defendant** is about to present evidence in the form of a **video/computer animation/[other]**, which is intended to help illustrate certain testimony or evidence being presented to you. The exhibit being presented is not an actual recording or video of the event that is shown. Rather, the exhibit is offered simply as a "reenactment." The exhibit is intended to help you better understand the **State's/defendant's** position about how an event occurred (or did not occur) and that party's understanding of the evidence supporting this interpretation. The exhibit is intended to assist you in your role as jurors, and like all evidence, it may be accepted or rejected by you, in whole or in part.

### Notes on Use

This Instruction should be given contemporaneously with the presentation of video, computer-based, or other comparable "reenactment" evidence. *See Dunkle v. State*, 2006 OK CR 29, ¶ 71, 139 P.3d 228.

### Committee Comments

In *Harris v. State*, 2000 OK CR 20, ¶¶ 16–17, 13 P.3d 489, the Oklahoma Court of Criminal Appeals offered the following guidelines for the use of video or computer-based reenactment evidence:

In order for a video or computer crime scene reenactment to be seen by a jury, as an aid to illustrate an experts witness' testimony, the court should require (1) that it be authenticated—the trial court should determine that it is a correct representation of the object portrayed, or that it is a fair and accurate representation of the evidence to which it relates, (2) that it is relevant, and (3) that its probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." See 12 O.S.1991, §§ 2401–2403, 2901.

The court should give an instruction, contemporaneous with the time the evidence is presented, that the exhibition represents only a re-creation of the proponent's version of the event; that it should in no way be viewed as an actual recreation of the crime, and like all evidence, it may be accepted or rejected in whole or in part. The court must also ensure that the other party has prior opportunity to examine the reenactment and underlying data. The trial court should also mark the video reenactment as a court's exhibit so that the record may be preserved.

## OUJI–CR 10–2
### GENERAL CLOSING CHARGE— FUNCTION OF THE JURY

It is your responsibility as jurors to determine the facts from the evidence, to follow the rules of law as stated in these instructions, to reach a fair and impartial verdict of guilty or not guilty based upon the evidence [, and to determine punishment if you should find the defendant guilty] ~~as you have sworn you would do~~ pursuant to your instructions. You must not use any method of chance in arriving at a verdict, but must base your verdict on the judgment of each juror.

### Notes on Use

The bracketed language should be used only in non-bifurcated trials and should be deleted if there are separate stages for the jury to determine guilt and punishment. *See Myers v. State*, 2006 OK CR 12, ¶ 66, 133 P.3d 312.